20 Utah 2d 95 (1967)
433 P.2d 602
PRUDENTIAL FEDERAL SAVINGS & LOAN ASSOCIATION, PLAINTIFF AND RESPONDENT,
v.
THE ST. PAUL INSURANCE COMPANIES, DEFENDANT AND APPELLANT,
v.
FIRST AMERICAN TITLE INSURANCE AND TRUST COMPANY, DEFENDANT AND RESPONDENT.
No. 10765.
Supreme Court of Utah.
November 9, 1967.
Skeen, Worsley, Snow & Christensen, Joseph J. Palmer, Salt Lake City, for appellant.
Pugsley, Hayes, Rampton & Watkiss, Harry D. Pugsley, Delbert M. Draper, Jr., Salt Lake City, for respondent.
ERICKSON, District Judge:
In the court below plaintiff, respondent, sought a declaratory judgment against St. Paul, appellant, and on motion of appellant, respondent First American Title Insurance And Trust Company was joined as a defendant. The trial court entered a summary judgment declaring appellant was liable to Prudential upon its policy and dismissing respondent First American Title Insurance And Trust Company. From this judgment St. Paul appealed. The parties in this cause will be referred to as Prudential, St. Paul, First American, Security Title and First Federal.
The fact situation is as follows: One Rowley was a loan officer for Prudential. He owned and sold to Parker in 1962 realty on a contract. He (Rowley) had given First Federal a first mortgage on this realty of some $14,000. In December of 1962 Parker applied to Prudential for a mortgage loan of $16,300, to be secured by a first lien on this realty purchased from Rowley. Prudential obtained from Security Title a Preliminary Title Report showing the mortgage to First Federal and advising Prudential a title policy for $16,300 would be issued on vesting of Prudential's interest. Prudential later loaned Parker $16,300, and Rowley took $14,600 to liquidate his contract with Parker and the balance was paid to Prudential to cover loan costs. Prudential's Trust Deed was dated December 26, 1962. The first mortgage to First Federal was not discharged, hence it retained its first lien. In 1965, Prudential discovered Rowley had embezzled sizeable sums over past years and learned for the first time that First Federal held a first mortgage on the Parker property. This, doubtless, prompted the instant case. Security Title recorded the Parker Trust Deed on January 22, 1963, insuring same as a first lien.
Prudential contends that Rowley's peculations were the sole and proximate cause of their deprivation of a first lien on the Parker property. St. Paul urges that the title insurance must respond, since Prudential's claim is limited to the lack of a first lien, and this deprivation is the primary responsibility of title policy.
Counsel for St. Paul contends that its blanket bond with extended coverage contains this provision: "If the insured holds other valid or collectible indemnity against any loss, covered hereunder, the underwriter shall be liable hereunder only for such amount of such loss as is excess of the amount of such other indemnity, not exceeding the amount of coverage hereunder."
The apparent meaning of the quoted provision is that St. Paul provides excess coverage only, if another bears primary liability for the loss so suffered. (See Allied Mutual Cas. Corp. v. General Motors Corp., 10 Cir., 279 F.2d 455-457.) Who then is the primary insurer? The title policy covered plaintiff against any loss or damage from liens or encumbrances, not therein excluded. The title policy further provides:
The company, at its own cost without undue delay, shall provide, among other things * * * (2) for such action as may be appropriate to establish the title or the lien of the mortgage as insured, which litigation or action in any of such events is founded upon an alleged defect, lien or encumbrance insured against by this policy and may pursue any litigation to final determination in the Court of last resort.
Plaintiff's contention that its loss resulted from the embezzled funds is without merit, since it was never intended that Prudential should have the funds, but any such loss would be borne by the Parkers. As hereinbefore indicated, Prudential's loss was its entitlement to a first lien and this loss must of necessity fall on Security Title and its insurer, First American. 9 Appleman's Insurance Law and Practice, par. 5210, page 15 provides:
Where at the time a policy was delivered the title was defective by reason of a lien or incumbrance, the contract was breached and the company was immediately liable to the insured for the loss actually suffered.
It is of little consequence to cogitate how or why Security Title failed, as it did, to note the first mortgage. It was of record and its failure in this behalf imposes any loss covered by its own neglect.
The rule having wide applicability provides that where a blanket policy contains a provision limiting its liability to an excess over specific insurance, the blanket policy must respond, only if the specific fails to satisfy the loss. (See 169 A.L.R. 390; Russell v. Paulson, 18 Utah 2d 157, 417 P.2d 658.)
It is interesting to note that had Security Title examined the record as it was obliged to do, Prudential would have suffered no loss and Rowley would have escaped, in part, the penalty of his peculations.
Since Prudential's complaint is its loss of a first lien, such loss cannot be equated with St. Paul, since Security Title and its insurer, First American, were primarily responsible for such loss.
The decision of the trial court is therefore reversed and remanded consonant with this opinion.
CALLISTER, J., concurs.
HENRIOD, Justice (concurring).
I concur, for the reason that Rowley's peculation had nothing to do with the state of the title, which American insured against encumbrances. One of these was the mortgage involved in this case. This mortgage easily was discoverable by examining the record. American missed it. American could have avoided liability had it examined the record and refused to write the policy. The dissent in this case misses the point with respect to primary liability under two entirely different types of policies and risks covered. It is one thing to share losses if there happens to be joint and several liability on the same risk under the same contractual terms. It is something else to require a casualty or life insurance company, or some other kind of company, to share losses simply because there happen to be two or more insurance policies covering unrelated risks.
TUCKETT, Justice (dissenting):
I respectfully dissent. The holding in the main opinion is based upon a provision of the policy issued by St. Paul, which is as follows:
If the insured holds other valid or collectible indemnity against any loss, covered hereunder, the underwriter shall be liable hereunder only for such amount of such loss as is excess of the amount of such other indemnity, not exceeding the amount of coverage hereunder.
I am of the opinion that that clause refers to concurrent insurance, that is, insurance which insures against the same risks as those covered by the policy above mentioned.
The policy of St. Paul among other things protected against the risk of embezzlement by an employee of the plaintiff. The policy issued by First American Title Insurance And Trust Company covered the title to the land only and insured that the plaintiff had a first mortgage lien on the land covered by the policy. Rowley, the loan officer for Prudential, was fully aware that there was a prior first mortgage upon the property in question. He was the former owner of the property and had sold it to William Duane Parker and wife by contract. The Parkers applied for a loan from Prudential for the purpose of completing payment to Rowley and retiring the first mortgage upon the property held by First Federal Savings & Loan Association. It appears that Rowley embezzled that portion of the proceeds of the loan from Prudential which was to have retired the first mortgage.
It appears to me that the loss we are here concerned with stemmed directly from Rowley's peculation and that this specific risk was covered by St. Paul's policy. St. Paul, having insured the specific risk, became obligated to pay plaintiff's loss to the extent of its policy and the title insurance policy should be treated as general insurance covering only a general risk of loss to the plaintiff by reason of a title defect that can only be resorted to in the event that the specific coverage is exhausted.
I would affirm the trial court.
CROCKETT, Chief Justice (dissenting):
I appreciate the effort of the main opinion to find a just and logical solution to the dilemma presented where two insurance policies would each cover the same loss, absent the other, and where each insurance company is attempting to shunt liability to the other. While not controlling, it is noteworthy that the opinion arrives at a conclusion opposite to that arrived at by the trial court, and of the dissent, who with similar purpose, appear to have approached the matter from a slightly different point of view and, with what I think is equally plausible logic, arrived at the opposite result. This, for me, emphasizes the desirability of the practical solution which I suggest would be fair and equitable: that where two insurance policies would each cover the same loss, that is, where either of them would have to pay the loss if the other did not exist, they should each pay their equitable share of the loss.
If we reject that solution and try to fix responsibility solely upon one or the other insurer, serious problems are encountered. There is presented a veritable verbal optical illusion, comparable to the cleverly drawn visual optical illusions, which can be seen as varying different forms, depending on the perspective; and the outcome depends upon the point of view from which the problem is approached. For example, here it can be argued with plausibility that at the time Rowley misappropriated the funds from Prudential, St. Paul Indemnity covered his peculation and should pay. If it did so, First American (Security Title) would escape liability. This it could do by relying on the exclusions under its policy which provide that it is to pay only for actual losses suffered and also excludes damage from defects known to the insured; and that the defect was in fact known to the insured (Prudential) through the knowledge of its officer Rowley; and therefore, St. Paul Indemnity should pay, as ruled by the trial court.
On the other hand, it can be argued with equal plausibility that First American (Security Title) issued its policy when there was in fact an unreleased mortgage, which is the very loss it accepted its premium to cover, and that even though this resulted from Rowley's peculations, the title company should pay. Wherefore, says St. Paul, if the title company pays, Prudential has suffered no loss; and St. Paul is therefore not liable because of the provision in its policy for nonliability if there is other insurance to cover the loss. Involved with the latter is the question as to whether the other insurance is restricted to coverage of the same party, subject matter and risk. And there are other problems encountered in attempting to determine which of two insurers covering the same loss should be held liable. One is that a specific coverage is usually held accountable ahead of a general coverage. The argument proceeds thus: that since it was the first mortgage protection that was lost, this was specifically covered by title insurance policy, and that company should pay. Opposed to this is the argument that the foundational cause of the loss was the embezzlement by Rowley, which is specifically covered by St. Paul, wherefore, the latter should pay. And so we are led through circuitous rationalizations in an effort to fix liability on one insurer and to exclude the other, and are urged to see the answer to this problem as either black or white, in an area which, to me, is grey.
For the reasons above stated, in my opinion it would be more fair and realistic to rule that where there are two or more insurance coverages, each of which would be liable for a loss except for the existence of coverage by the other, each should bear its fair share of the loss. This would normally mean that if the loss is within their policy limits, they should share equally in paying it. That is the order I would make in the instant case.
ELLETT, J., being disqualified, did not participate herein.