**LIBERTY MUTUAL INSURANCE COMPANY, Plaintiff-Appellant,**

v.

**ALLIED MUTUAL INSURANCE COMPANY et al., Defendants-Appellees.**

**Nos. 429–70, 430–70.**

United States Court of Appeals, Tenth Circuit.

May 28, 1971.

David W. Buxton, Wichita, Kan., argued the cause for plaintiff-appellant.

H. E. Jones and Geer Gsell, Wichita, Kan., argued the cause for defendants-appellees.

Before LEWIS, Chief Judge, and SETH and COFFIN*, Circuit Judges.

COFFIN, Circuit Judge.

This is an appeal from a declaratory judgment action, based upon diversity jurisdiction, to determine primary insurance coverage on a claim arising out of an automobile accident which occurred in Kansas. Both insurance contracts were made under Kansas law.

The facts are not in dispute. Donald May was a named insured upon a family automobile policy issued by Allied Mutual Insurance Company. May worked for John Morrell & Company which furnished him with a company car. Morrell insured the car with Liberty Mutual Insurance Company. On the day of the accident, May drove the car owned by Morrell and insured by Liberty to a service station. He picked up a pump he owned which the station had repaired. The pump was permanently mounted on an iron frame which was welded to a two-wheel axis. It would not attach to a standard ball trailer hitch, commonly used on automobiles. Instead the trailer hitch was inverted and the pump frame was attached by a makeshift arrangement involving baling wire and chain. Shortly after leaving the service station, the pump broke away and collided with another automobile.

Liberty admits that the pump was a "trailer" within the definition of its policy, and that it is liable. The issues before us are whether this arrangement was a "trailer" covered by the Allied policy and, if both policies provide coverage, which company is primarily liable. The district court determined that this contraption was covered as a "trailer" under Allied's policy but that Allied's coverage was excess coverage. Both parties have appealed.

The Allied policy defines "trailer" as follows:

"'trailer' means a trailer designed for use with a private passenger automobile, if not being used for business or commercial purposes with other than

* Of the First Circuit sitting by designation.

a private passenger, farm or utility automobile, or a farm wagon or farm implement while used with a farm automobile."

It is Allied's contention that the portable pump was not "a trailer designed for use with a private passenger automobile."

In construing the contract, the district court focused on the term "trailer" as used in Kansas law. It determined that there was no controlling state definition and assumed, that the term "trailer" was used "without further definition or qualification." Applying the rule that ambiguous terms are to be construed in favor of the insured and against the company that wrote the policy, citing Prickett v. Hawkeye-Security Insurance Co., 282 F.2d 294, 301 (10th Cir. 1960), it held that "Literally speaking, the equipment in question 'trailed'— it was a two-wheeled vehicle, without motive power, which carried property, and was capable of being drawn and towed by a private passenger automobile." In so interpreting "trailer", the court either ignored the qualifying words "designed for use with a private passenger automobile", or equated them in meaning to "capable of being drawn and towed by a private passenger automobile."

█ The principle of construing insurance contracts and other contracts of adhesion against the party who dictated the terms is widely accepted.[1] But courts are not free to utilize this rule unless ambiguity remains "[a]fter applying all of the ordinary processes of interpretation." 3 Corbin, supra, § 559 at 262. The purpose of the rule is not to predetermine all disputes between insurance companies and their insured, but rather "to

aid the court in arriving at the intent of the parties to the policy." Prickett v. Hawkeye-Security Insurance Co., supra at 301.

In this case we confess that the primary aid to determining intent, i. e., the words of the contract, seems to be sufficient. We do not at all say that the district court erred in its painstaking effort to define "trailer". Its error, as we see it, lay in not attaching more significance to the limitation trailing "trailer", i. e., "designed for use with a private passenger automobile." If these words were given any significance, they were deemed synonymous with "capable of being drawn and towed" by a private passenger automobile. This interpretation renders them meaningless for obviously something which cannot be drawn or towed will never become involved in an accident, at least one between moving vehicles. By the same token, if a trailer is equipment which can be "trailed", then construing the limiting language as the court did, if it construed it at all, would have us read the policy as covering "equipment which can be trailed if capable of being drawn or towed by a car." So read, the clause would be a classic of redundancy. On the other hand, "designed for use with" seems to us to connote an object planned with a particular use in mind and so manufactured as to serve that use with reasonable efficiency and safety.[2]

The undisputed evidence clearly indicates that the portable pump was not "designed" to be towed by a passenger car. The pump was not designed by the manufacturer to be portable; the original owner, who operated a nursery, had made the equipment mobile by mounting

---

1. *See* 1 Couch on Insurance § 15:26 (1959); 3 Corbin on Contracts § 554 (1960); Keeton, Insurance Law Rights at Variance with Policy Provisions, 83 Harv.L.Rev. 961, 963–65 (1970); Slawson, Standard Form Contracts and Democratic Control of Lawmaking Power, 84 Harv.L.Rev. 529, 530–33 (1971).

2. The relevant dictionary definitions of "design" indicate this orientation to end use: "devise or propose for a specific function"; "create, plan, or calculate for serving a predetermined end"; "plan or produce with special intentional adaptation to a specific end". Websters Third New International Dictionary, 611 (1966).

it on a simple frame with attached wheels. The device had no brakes or taillights. It weighed 1500 to 1800 pounds and was tail-heavy so that it did not balance properly. It could not be attached to a standard automobile hitch; instead a standard hitch had to be inverted and fastened to the tongue by wire and chain. In a deposition May, the owner of the pump, stated that the pump was not designed for highway use, that he did not intend to use it on the highway, and that he was merely taking it home on the day of the accident. He also stated he planned to leave the pump attached to the frame and that it would be very difficult to use the frame for any other transport purposes.

After examining this evidence, the district court itself stated:

"[T]he term 'trailer' does not necessarily include any and every item being towed upon the highway. * * * ██n the common sense of the term, the pump as it appears in the photographs submitted for the Court's inspection, is not such an item as one would customarily expect to find in use upon the highways, or such item as usually comes to mind in connection with the word 'trailer'. While the parties have stipulated that May did not possess the pump for 'commercial' purposes as such, it seems clear that it may properly be described as 'special mobile equipment'."

██ We conclude that the mobile pump was not a "trailer designed for use with a private passenger car". Allied quite reasonably declined to accept responsibility for everything its policyholders could put on wheels and pull with a car. It insured only those "trailers" designed to be pulled by cars because it wanted to cover only trailers that would not be, in and of themselves, highway hazards. A heavy piece of machinery on wheels, that had no brake or taillights, that was improperly balanced to be towed by car, that could not be attached to a standard automobile trailer hitch, and that was not designed or generally used on the highway is not covered under the Allied policy.

The Allied policy therefore does not apply and the issue as to excess coverage is accordingly foreclosed.

Reversed and remanded with directions that judgment be entered in accordance with this opinion.