CARIBOU FOUR CORNERS, INC., Howard Williams, United States Fidelity and Guaranty Company, Plaintiffs-Appellees,

v.

TRUCK INSURANCE EXCHANGE, Defendant-Appellant and Cross-Appellee, and

Imperial Casualty and Indemnity Company, Defendant-Appellant and Cross-Appellant.

Nos. 109–70, 110–70.

United States Court of Appeals, Tenth Circuit.

June 10, 1971.

Harold G. Christensen, of Worsley, Snow & Christensen, Salt Lake City, Utah, for plaintiffs-appellees.

Don J. Hanson, Salt Lake City, Utah (Hanson & Garrett, Salt Lake City, Utah, on the brief), for defendant-appellant and cross-appellee Truck Ins. Exchange.

Ray R. Christensen, Salt Lake City, Utah (Christensen & Jensen, Salt Lake City, Utah, on the brief), for defendant-appellant and cross-appellant Imperial Casualty and Indemnity Co.

Before BREITENSTEIN, Mc-WILLIAMS and DOYLE, Circuit Judges.

BREITENSTEIN, Circuit Judge.

This is a three-way fight to determine the liability of insurance carriers. Williams, a truck driver employed by Ashworth Transfer, Inc., was injured while pipe consigned to Caribou Four Corners, Inc., an oil company, was being unloaded on a public street in Davis County, Utah. The accident occurred when a crane used to unload pipe from the truck struck a high-voltage power line and the electrical discharge burned Williams.

In effect at the time of the accident were (1) a comprehensive liability policy issued by Truck Insurance Exchange to Ashworth and covering its vehicles, (2) a comprehensive automobile liability policy issued by Imperial Casualty and Indemnity Company to Caribou, and (3) a comprehensive general liability policy issued by United States Fidelity & Guaranty Company (USF&G) to Caribou. Williams sued Caribou. Notices of the suit were sent to Truck Insurance and Imperial both of whom refused to defend. USF&G undertook the defense. Later Caribou, Williams, and USF&G brought this declaratory judgment action against Truck Insurance and Imperial to determine the respective liabilities of the insurance carriers. Jurisdiction is based on diversity. On motion for summary judgment, the district court concluded that all of the policies afforded coverage to Caribou and that the policies of Truck Insurance and Imperial were primary to that of USF&G.

At the threshold we are met by an unusual situation. After the appeals had been filed in this court, Truck Insurance discovered that it had submitted the wrong policy form to opposing counsel and to the district court, and moved to remand for determination by the district court of a motion for relief under Rule 60(b), F.R.Civ.P. We granted the motion. Rule 60(b) relief was then sought from the district court on the grounds of mistake, inadvertence, excusable neglect, and inability of the court to do substantial justice without the proper insurance policy before it. Affidavits disclosed that, because of a blunder by the home office of Truck Insurance, its counsel submitted a wrong policy form. The matter came to light during settlement negotiations with Williams after the district court had entered the judgment in the declaratory judgment action.

The district court put the blame on Truck Insurance, saying that it "permitted the case to go forward to final judgment without furnishing the information the company had in its files which counsel well might not have been expected to know." The court denied Rule 60(b) relief on the grounds that there was no mistake, inadvertent surprise, excusable neglect, new evidence which could not have been discovered by dili-

gence, fraud, misrepresentation, or other improper conduct of an adverse party.

■ Truck Insurance argues that the remand was a directive to the district court to overturn its original decision and cites Baruch v. Beech Aircraft Corporation, 10 Cir., 172 F.2d 445, cert. denied 338 U.S. 900, 70 S.Ct. 251, 94 L.Ed. 554; Wm. Goldman Theatres, Inc. v. Loew's, Inc., 3 Cir., 163 F.2d 241, cert. denied 334 U.S. 811, 68 S.Ct. 1016, 92 L.Ed. 1742, and Zig Zag Spring Co. v. Comfort Spring Corp., 3 Cir., 200 F.2d 901, as holding that a remand should not be granted unless the showing suffices to justify a new trial. In each of those cases the remand was denied. In the case at bar the court of appeals entered a minute order remanding the case to the district court to permit the court to consider the Rule 60(b) motion, directing the transmittal of a supplemental record, and retaining jurisdiction for all other purposes. Nothing in the remand order suggests any consideration by the court of appeals of the merits of the remand motion. We are not now concerned with whether the remand should have been granted but with whether the district court ruled properly after the remand. The remand order left the issues raised for district court consideration and cannot be taken as any determination of those issues.

■ In a Rule 60(b) proceeding the motion is addressed to the sound discretion of the trial court. Abel v. Tinsley, 10 Cir., 338 F.2d 514, 516, cert. denied 375 U.S. 851, 84 S.Ct. 108, 11 L.Ed.2d 78; 7 Moore's Federal Practice, 2d ed., ¶ 60.19, p. 322 et seq. Cases such as Tozer v. Charles A. Krause Milling Co., 3 Cir., 189 F.2d 242, which hold that Rule 60(b) should be given a liberal construction to provide relief from default judgment and assure a trial on the merits, have no application here. Truck Insurance had a full trial on the merits. It made the mistake and it inexcusably neglected to correct the mistake until after the adverse judgment. In effect Truck Insurance now says that it has newly discovered evidence which justifies a new trial. A motion for new trial on such ground is addressed to the sound discretion of the trial court and its ruling thereon will not be disturbed except for manifest abuse of discretion. McCullough Tool Company v. Well Surveys, Inc., 10 Cir., 343 F.2d 381, 410, cert. denied 383 U.S. 933, 86 S.Ct. 1061, 15 L.Ed.2d 851. Truck Insurance had the evidence in its own files at all pertinent times. By the exercise of any diligence it would have found it. Truck Insurance did not convince the trial court, and has not convinced us, that a different result would be reached in this case if consideration is given to the policy produced after the trial. The trial court correctly denied the requested Rule 60(b) relief and in so doing did not abuse its discretion.

In its answer Truck Insurance admits that "pipe was being unloaded by a crane operated by the employee of Caribou Four Corners, Inc." The policy contains a "loading and unloading" provision. Truck Insurance does not contend that Caribou is not within the "persons insured" provisions of its policy.

■ The Truck Insurance policy excludes loading and unloading coverage for injury "if the accident occurs on premises (including the ways immediately adjoining) owned, rented or controlled by the person or by the employer of the person against whom the claim is made."[1] The person against whom the claim is made is Caribou and the question is whether the exclusion applies.

The accident occurred on a public street about 550 feet east of the east boundary of the Caribou property. The pipeline under construction by Caribou was intended to carry oil products and by-products to and from the Caribou premises. It was to be constructed in part along a public street under agreements between Caribou, Davis County, and Woods Cross City. The unloading procedure was that one length of pipe

---

1. This provision is the same in each of the two Truck Insurance policies.

would be removed from the truck and laid on the ground. The truck would then proceed for the length of the section of pipe and another section would be removed and placed on the ground in linear fashion. After the trench was dug the pipe would be placed in it. The district court held that under the facts the "on premises" exclusion did not apply.

Two questions are presented. The first is the meaning of "owned, rented or controlled." Caribou neither owned nor rented the portion of the street where the accident occurred. It had permits from Davis County and Woods Cross City for "Excavation, Crossing or Alteration" along a designated street. As we read those permits, control over the street remained in the public bodies. The rights of Caribou were limited to the construction and use of the pipeline. Although Caribou had a right to lay the pipe, it had no right to control the street.

The second argument on this point is that the exclusion applies because the accident site was "immediately adjoining" the Caribou premises. The uncontested finding of the trial court that the accident site was on a public street 550 feet from the boundary of the Caribou premises disposes of this point. Adjoining in its ordinary sense means touching or contiguous. See United States v. Great American Indemnity Co. of New York, 9 Cir., 214 F.2d 17, 19, which held that the phrase "immediately adjoining" embraced only that portion of a sidewalk abutting or touching a store. Immediately means with no space intervening. See Long v. London & Lancashire Indemnity Co. of America, 6 Cir., 119 F.2d 628, 630, where the court held that "immediately adjacent" did not encompass an accident occurring on a street 60 feet from an insured's premises. We see no pertinence in decisions relating to policy language different from that in the Truck Insurance contract. United States v. Pan American Refining Corpo-

ration, 5 Cir., 219 F.2d 685, and Republic Oil Refining Co. v. Granger, 3 Cir., 198 F.2d 161, are tax cases which do not persuade us. We agree with the trial court that Truck Insurance cannot escape liability because of the "on premises" exclusion.

■ Truck Insurance also relies on the employee exclusion clause of its policy. The pertinent language reads that the insurer is not liable for "bodily injury to any employee of the insured arising out of and In (sic) the course of his employment by the Insured." [2] The injured man was an employee of Ashworth, the named insured, and not of Caribou, an additional insured.

The policy defines both "named insured" and "insured." The definition of insured contains the statement that "the insurance afforded applies separately to each insured against whom claim is made or suit is brought, except with respect to the limits of the Company's liability." The trial court held that the employee exclusion clause was not applicable "because of the distinction drawn in the policy between 'insured' and 'named insured.'"

A contrariety of judicial opinion has developed on the construction and application of the employee exclusion clause. No good purpose would be served by a case by case analysis of the many decisions. They may be found in 50 A.L.R. 2d 97–99 and in Later Case Service, Vols. 49–55 A.L.R.2d 105–107. See also 7 Appleman Insurance Law and Practice § 4413, pp. 398–404, and 1971 Pocket Parts 356–360. Our attention is directed to no Utah decision on the issue.

We have given consideration to Lehman v. State Farm Mutual Automobile Insurance Company, 10 Cir., 350 F.2d 568, which is not cited in the briefs. That case arose in Kansas and we applied the exclusion. We believe that the case is not controlling here for two reasons. In Lehman the injured man was an employee of a joint venture in which the named insured and another were en-

2. The provision is substantially the same in each of the Truck Insurance policies.

gaged. In the case at bar the injured man was employed by the named insured which had an entity separate and distinct from that of the additional insured. Second, in Lehman the court relied heavily on Kansas cases which are there cited. There appear to be no such decisions in Utah.

In a diversity case such as this where state law is to be applied and there are no state court decisions on the issue, we defer to the district court's judgment as to what the state courts would decide when confronted with the issue unless we are convinced that the district court is clearly wrong. Stephens Industries, Inc. v. Haskins and Sells, 10 Cir., 438 F.2d 357, 359. The task of predicting what the highest court of a state will do becomes particularly difficult in a case such as this where there are two diametrically opposed lines of authority. All we can do is to determine which authorities are, in our opinion, best reasoned.

One of the objects of the exclusion is to avoid duplication of coverage with workmen's compensation insurance. That purpose is not pertinent here because the injured man is asserting a claim against Caribou which did not employ him. If the electrical discharge had injured a passerby who had sued Caribou, the Truck Insurance policy would apply. It would seem that the same protection should apply to any other person who is not an employee of Caribou. We see no reason why "an insured should not be indemnified against a claim of one outside *that* insured's employment." Pepsi-Cola Bottling Company of Charleston v. Indemnity Insurance Company of North America, 4 Cir., 318 F.2d 714, 716.

The severability of interest clause, mentioned above, affords protection "separately to each insured." In the context with which we are concerned, Caribou must be considered separately from Ashworth. In such case the employee exclusion does not apply because the injured man was not an employee of Caribou. As we read the exclusion the named insured is covered for injuries to employees of an additional insured, the additional insured is covered for injuries to employees of the named insured, but neither would be covered for injuries to its own employees. See Employers' Liability Assurance Corporation, Ltd. v. Travelers Insurance Company, 2 Cir., 411 F.2d 862, 866, a case involving a fact situation remarkably analogous to that in the case at bar.

The split in authority which we recognize makes pertinent the comment of the Second Circuit, ibid at 865, that the insurers could readily end the controversy "by the simple expedient of saying clearly what they mean." An ambiguous policy is "construed most strongly against the insurer who prepared it." Pearl Assur. Co., Ltd. v. School Dist. No. 1 in San Miguel County, Colo., 10 Cir., 212 F.2d 778, 781; see also Liberty Mutual Insurance Company v. Allied Mutual Insurance Company, 10 Cir., 442 F.2d 1151. We are convinced that the trial court correctly forecast the Utah law and that its decision upon the effect of the employee exclusion clause must be upheld.

Truck Insurance makes no point of the applicability of the loading and unloading clause but Imperial does and urges that the accident was not causally related to the unloading. The affidavit of the crane operator says that Williams and another were on the ground beside the truck to unfasten the crane cable after the crane had lifted a section of pipe from the truck and laid it on the ground and that the accident occurred as they "were unfastening the crane cable * * * and the crane boom and cable became energized from a high voltage overhead power line." No one disputes these facts. The district court held that the injuries to Williams arose out of, were in the course of, and were proximately related to the unloading of the truck within the purview of the "completed operation doctrine" recognized in Utah.

Two lines of authority have developed under the loading and unloading clauses.

Under the "coming to rest" doctrine, unloading stops when the article is first set down or ceases in the movement which took it from the truck. Under the "complete operation" doctrine unloading includes the entire process involved in the movement of the articles to the place where they are turned over to the party to whom they are to be delivered.

Utah has adopted the complete operations doctrine. See Pacific Automobile Ins. Co. v. Commercial Casualty Ins. Co. of New York, 108 Utah 500, 161 P.2d 423, 428. The court there found the necessary causal relationship "in the fact that the accident occurred in the course of making a commercial delivery in which delivery the use of the truck was an active factor or element." Ibid. In Robinson v. Employers' Liability Assurance Corporation, Ltd., 22 Utah 2d 163, 450 P.2d 91, 92, the court held that the cause of the accident was not related to the process of unloading or to the use of the truck. In the case at bar the accident arose out of, and occurred during, the unloading of the truck. The removal of the cable from the pipe was a necessary and integral part of the removal of the pipe from the truck. The accident would not have occurred but for the need to remove the particular length of pipe, and the remaining lengths of pipe, from the truck. Moreover, the accident was closely related in time and space to the movement of goods from the vehicle. This is enough to establish the necessary causal relationship. See McCloskey and Company v. Allstate Insurance Companies, 123 U.S.App.D.C. 177, 358 F.2d 544, 547. The concrete bucket cases cited by Imperial, e. g. Liberty Mutual Insurance Company v. Johnson, Drake & Piper, Inc., 8 Cir., 390 F.2d 410, are inapposite. In those cases there was a dual operation, one of unloading and the other of construction. In the case at bar the pipe was being unloaded. The trench into which the pipe was to be placed had not even been dug. In our opinion the accident arose in the course of, and was causally related to, the unloading of the truck.

Finally, we come to the question of the relative liability of the three insurance carriers. The trial court held that Caribou was protected under all three of the policies, that Truck Insurance and Imperial were primarily liable, and that USF&G was secondarily liable. Both Truck Insurance and Imperial challenge the holding that USF&G was secondarily liable.

Caribou had two policies, one issued by Imperial to cover comprehensive automobile liability protection and the other issued by USF&G to cover hazards other than those which could be covered by automobile liability insurance. The accident arose out of the unloading of the truck and was specifically covered by the Imperial and Truck Insurance policies. The liability of USF&G was general. Utah law governs and we are not concerned with the decisions in other jurisdictions or the theories of text writers. The trial court held that the matter was foreclosed by Prudential Federal Savings & Loan Association v. St. Paul Insurance Companies, 20 Utah 2d 95, 433 P.2d 602. In that case, over a vigorous dissent, the court rejected the theory that when two insurance policies, one insuring against the risk of failure of title and one insuring against the risk of embezzlement, cover the same loss, each should pay its equitable share. The court noted that the title policy covered loss from liens or encumbrances and that the loss was occasioned by a prior lien. It concluded that on the facts presented, the specific insurer (title insurer) was "primarily responsible for such loss." Ibid at 603. The case came before the Utah Supreme Court a second time and the decision made on the first appeal was sustained. Prudential Federal Savings & Loan Association v. St. Paul Insurance Companies, 22 Utah 2d 70, 448 P.2d 724.

The facts in the Prudential case differ from those with which we are concerned. Caribou took out two different insurance policies which provided different coverage. The Imperial policy specifically covered motor vehicles and contained a loading and unloading clause.

The USF&G policy covered most hazards other than those covered by comprehensive automobile liability. The purpose of the Imperial and USF&G policies were different. The intent of the insured in securing the two policies can only have been to obtain complete coverage.

We are bound by Utah law. No matter what may be said about the Prudential decision, the majority of the court upheld the primary liability of the specific insurer. We believe that the trial court's interpretation of Utah law was correct and is binding on us. Accordingly, USF&G has only secondary liability.

Imperial asserts that its policy was excess over that of Truck Insurance and that the trial court should have made a determination of the respective liability of the two companies. It is enough to say that the pleadings did not raise the issue of the respective liabilities of Imperial and Truck Insurance and that the trial court declined to make a determination thereof. In the circumstances we leave the parties in the same situation that the trial court left them.

Affirmed.