Commonwealth *v.* Stewart, Appellant.

Submitted December 10, 1971. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*R. Barclay Surrick,* Assistant Public Defender, for appellant.

*O. Warren Higgins* and *Ralph B. D'Iorio,* Assistant District Attorneys, and *Stephen J. McEwen, Jr.,* District Attorney, for Commonwealth, appellee.

OPINION BY HOFFMAN, J., March 24, 1972:

In this direct appeal appellant maintains that he was unlawfully sentenced and urges that the sentences so imposed should be vacated and that he be given in their stead a suspended sentence.

The facts in the case are as follows:

On January 17, 1961, appellant pleaded guilty before the Honorable Judge TOAL to a series of burglaries and rapes.

After the pleas were taken, defense counsel informed the court that appellant was due to be tried in Philadelphia on other charges within "the next month to six weeks. Presently he is undergoing various sorts of examinations, the result of none of which we know will constitute a legal defense to any of these; however, they may go a long way in assisting the court in deter-

mining what type of sentence and to where this defendant should be sentenced when the time comes. In view of these considerations, we would respectfully ask the court to defer sentencing this man until after he comes to trial and his case is disposed of in Philadelphia. Now, of course, I am not asking until after his sentence expires in Philadelphia, but as soon as he is done in Philadelphia he can be brought back here for sentencing, sir".

The District Attorney agreed with this suggestion stating "I think the suggestion that we wait until his case is disposed of by way of sentencing in the City of Philadelphia is a feasible suggestion and the Commonwealth will have no objection, subject to your honor's approval".

The Court responded "[a]ll right, I will direct that the notes of testimony of the matters that are now before the court be transcribed, that the original be filed of record, and that copies be furnished to the district attorney and also counsel for the defendant, so we will have a chronological statement of what has occurred in court up to the present time. On each of these indictments we will defer sentence until further order of the court. Let the record show that we are doing this in a formal manner so that there can be no question as to the passage of time and the entering into a new term of court, a new session of court. We will remand the defendant back to the custody of the authorities in Philadelphia."

Apparently, through inadvertence, appellant was not sentenced by the Delaware County Court at the conclusion of his trial in Philadelphia. Instead, he was forced to wait for over 11 years until he finished serving the sentence that was imposed upon him by the Philadelphia court before being brought back to Delaware County for sentencing.

By that time, however, Judge TOAL was dead and Judge REED presided over the sentencing. Appellant was represented by new counsel, a voluntary defender, and the district attorney who participated in the sentencing was also not present at the time that appellant's guilty pleas were entered.

All parties at the sentencing proceeded under the mistaken assumption that appellant's sentencing was to have been delayed until he completed serving his imprisonment for the offenses for which he was tried and convicted in Philadelphia County. However, no one present realized that it was the intent of Judge TOAL, the district attorney and the defense counsel at the time that the pleas were entered that defendant be sentenced within approximately four to six weeks following the entrance of the pleas, when it was thought that his Philadelphia trials would have been concluded. Judge REED sentenced appellant to 18 months to ten years imprisonment.

Appellant now claims that the sentence imposed should be vacated because the delay of over ten years in his being sentenced was unconstitutional in that it denied him due process and his right to a speedy trial.

# I

In *Commonwealth v. Giovengo,* 188 Pa. Superior Ct. 220, 146 A. 2d 629 (1958), our Court considered a claim similar in certain respects to that in the instant case. In *Giovengo,* appellant plead guilty in 1955 in Franklin County. Sentence was deferred and as with the appellant herein, Giovengo was "turned over to the Allegheny County authorities to answer for similar crimes in that county." He pleaded guilty to the Allegheny County charges and was sentenced to 5 to 20 years imprisonment. Giovengo, however, was not returned to Franklin

County for sentencing until 1958, three years after his original conviction in 1955. Giovengo sought to have the sentences vacated on the basis that he was denied "his right to a speedy trial and due process of law as guaranteed by Art. I, §9 of the Pennsylvania Constitution and the Fourteenth Amendment to the United States Constitution". In passing on these claims, this Court noted that *Commonwealth ex rel. Wilhelm v. Morgan,* 278 Pa. 395, 397, 123 A. 337 (1924), provided the governing standard in that where sentence is deferred "the right to later impose sentence remains with the trial court, and the time of its exercise is a matter for judicial discretion; manifestly, however, it would be an abuse thereof to impose sentence after a great delay. Hence, under any view of the law, sentence must be imposed, if ever, within a reasonable time after conviction." *Giovengo* also noted the language in *Commonwealth ex rel. Holly v. Ashe,* 368 Pa. 211, 219, 82 A. 2d 244 (1951), that "the suggestion that the constitutional right of an accused to a speedy trial requires that he be sentenced timely is, of course, true. . . ."

In light of these authorities, *Giovengo* held that a sentence may only be deferred, as it was for three years in that case, when good cause exists, such as was thought to be the case in *Giovengo,* where we concluded that the lower court "undoubtedly . . . wanted to know before the imposition of sentence whether imprisonment had rehabilitated the prisoner or whether imprisonment had had an adverse effect upon him." 188 Pa. Superior Ct. at 226.

Under the standard set forth in *Giovengo,* appellant in our view is entitled to relief. It is clear from the statements of the trial court, the district attorney and defense counsel at the time that appellant pleaded guilty that it was the intention of all concerned that appellant would be sentenced within six weeks of his plea.

6

It was never the intention of the trial judge that appellant should first undergo imprisonment on other charges, complete such imprisonment and then be sentenced. Accordingly, the justification for the delay as found in *Giovengo* is completely absent here. Therefore, under the express authority in *Giovengo* the sentences must be vacated.

II

After our Court decided *Giovengo* in favor of the Commonwealth, allocatur was refused and Giovengo proceeded on a writ of habeas corpus to the Federal District Court for the Western District of Pennsylvania. There he raised all the federal constitutional claims that he raised in the state courts. The Federal District Court in effect reversed our Court, vacated the sentence imposed by the Franklin County Court and ordered that Giovengo be discharged.

Specifically, the District Court, in *United States ex rel. Giovengo v. Maroney,* 194 F. Supp. 154 (1961), agreed with the position of Judge (now President Judge) WRIGHT, who was the lone dissenter in our Court in *Giovengo,* that no sentence may be deferred for almost three years on the basis set forth in *Giovengo.* Instead, the Federal District Court, quoting from Judge WRIGHT's dissent, held that " 'Justice delayed is justice denied.' " 194 F. Supp. at 157. As a matter of due process, therefore, the Federal District Court granted relief, notwithstanding the justifications for the delay set forth in the majority opinion in *Giovengo* in this Court. In addition, the Federal District Court, citing *Commonwealth ex rel. Holly v. Ashe,* supra, and *Pollard v. Ashe,* 352 U.S. 354 (1957), indicated that the federal constitutional right to a speedy trial may require that sentence be imposed timely. The District

Court, however, refused to decide the case on speedy trial grounds in that the sixth amendment guarantee to a speedy trial had not yet been made applicable to the states. That was first accomplished six years later in *Klopfer v. North Carolina*, 386 U.S. 213 (1967).

No express authority therefore exists for the conclusion that the federal constitutional right to a speedy trial incorporates the right to be sentenced on a timely basis. It should be noted, however, that many of the same considerations concerning the progress of a prisoner's rehabilitation which warrant that a prisoner in one jurisdiction be given a speedy trial in a second jurisdiction in which he is charged with a crime, which were noted both in *Klopfer* and in *Smith v. Hooey*, 393 U.S. 374 (1969), are present here.[1] These considera-

---

[1] In *Smith v. Hooey*, supra, it was stated at pp. 377-379 "[The] constitutional guarantee [to a speedy trial] has universally been thought essential to protect at least three basic demands of criminal justice in the Anglo-American legal system: '[1] to prevent undue and oppressive incarceration prior to trial, [2] to minimize anxiety and concern accompanying public accusation and [3] to limit the possibilities that long delay will impair the ability of an accused to defend himself.' [Citation omitted.] These demands are both aggravated and compounded in the case of an accused who is imprisoned by another jurisdiction.

"At first blush it might appear that a man already in prison under a lawful sentence is hardly in a position to suffer from 'undue and oppressive incarceration prior to trial'. But the fact is that delay in bringing such a person to trial on a pending charge may ultimately result in as much appression as is suffered by one who is jailed without bail upon an untried charge. First, the possibility that the defendant already in prison might receive a sentence at least partially concurrent with the one he is serving may be forever lost if trial of the pending charge is postponed. Secondly, under procedures now widely practiced, the duration of his present imprisonment may be increased, and the conditions under which he must serve his sentence greatly worsened, by the pendency of another criminal charge outstanding against him.

"And while it might be argued that a person already in prison would be less likely than others to be affected by 'anxiety and

tion, independent of the speedy trial claim, raise a due process issue. Therefore, we need not decide the speedy trial claim.

For the above reasons we grant relief not only on the basis that the standards set forth in our decision in *Giovengo* require relief to be granted, but also on the basis of the denial of appellant's right to due process. *Commonwealth ex rel. Giovengo v. Maroney*, supra.

The judgment of sentence is vacated and appellant is ordered discharged.

WRIGHT, P. J., WATKINS and MONTGOMERY, JJ., would affirm on the opinion of Judge REED.

---

concern accompanying public accusation', there is reason to believe that an outstanding untried charge (of which even a convict may, of course, be innocent) can have fully as depressive an effect upon a prisoner as upon a person who is at large. Cf. Klopfer v. North Carolina, supra, 386 U.S. at 221-222, 87 S. Ct. at 992-993. In the opinion of the former Director of the Federal Bureau of Prisons, '[I]t is in their effect upon the prisoner and our attempts to rehabilitate him that detainers are most corrosive. The strain of having to serve a sentence with the uncertain prospect of being taken into the custody of another state at the conclusion interferes with the prisoner's ability to take maximum advantage of his institutional opportunities. His anxiety and depression may leave him with little inclination toward self-improvement'."