381 A.2d 952

**COMMONWEALTH of Pennsylvania**

v.

**Earl M. RUTHERFORD, Jr., Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 14, 1976.

Decided Dec. 28, 1977.

Richard R. Fink, First Assistant Public Defender, Doylestown, with him Eugene A. Kestenbaum, Assistant Public Defender, Doylestown, for appellant.

Peter F. Schenck, Assistant District Attorney, with him Stephen B. Harris, First Assistant District Attorney, Doylestown, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

On January 27, 1972, following a trial before a judge without a jury, appellant was found guilty of carrying a firearm without a license[1] and turning off lights to avoid

1. Act of June 24, 1939, P.L. 872, § 628, *as amended* Aug. 13, 1963, P.L. 660, No. 346, § 1 [18 P.S. § 4628(e) (Supp. 1973–74)].

identification.[2] Post-verdict motions were filed February 8, 1972 and denied by a court en banc on March 16, 1973. On October 31, 1975, appellant was sentenced on both counts to imprisonment for a term of not less than three months nor more than six months, said sentence to run concurrently with any other sentence having priority in time.

Appellant's first contention is that his sentence must be vacated due to an unexplained delay of over two years and seven months between denial of his post-trial motions and his sentencing. However, appellant did not bring this matter to the attention of the lower court at the time of sentencing,[3] and the claim may thus be deemed waived. *See Commonwealth v. Strand,* 464 Pa. 544, 347 A.2d 675 (1975); *Commonwealth v. Piper,* 458 Pa. 307, 328 A.2d 845 (1974).

Even were we to reach appellant's sentencing claim on the merits, the result would be the same. Appellant maintains that two cases from this court require that the sentence herein be vacated, *Commonwealth v. Giovengo,* 188 Pa.Super. 220, 146 A.2d 629 (1958) and *Commonwealth v. Stewart,* 221 Pa.Super. 1, 289 A.2d 126 (1972). In *Giovengo,* the appellant pled guilty to charges in Franklin County, sentence was deferred and he was turned over to Allegheny County officials to face other charges. The appellant was not returned for sentencing on the Franklin County guilty pleas until three years later. In response to the appellant's assertion that this delay deprived him of his right to a speedy trial and due process of law, the court held "that in Pennsylvania a sentence may be suspended (footnote omitted) or deferred for a period of time equal to the maximum term for which the defendant might have been sentenced, provided proper reasons are present to justify the delay."

2. Act of April 29, 1959, P.L. 58, § 1038, *as amended* June 30, 1972, P.L. 503, No. 162, § 2 [75 P.S. § 1038 (Supp. 1977–78)].

3. The issue first appears in appellant's statement of reasons for his appeal filed with the lower court.

*Commonwealth v. Giovengo, supra* 188 Pa.Super. at 227, 146 A.2d at 632.[4]

Although the period between the denial of post-trial motions and sentencing in the instant case was less than the three year maximum term to which appellant could have been sentenced, it is urged that *Giovengo* requires us to reverse here because no reasons for the delay appear of record.[5] While it is true that the Commonwealth advances no justification other than inadvertence for the hiatus in these proceedings, there are other factors which separate this case from *Giovengo* and lead us to the conclusion that relief on this claim would be inappropriate. First, the appellant in *Giovengo* repeatedly sought to be sentenced, while appellant herein never asserted such a desire. Second, the appellant in *Giovengo* was clearly prejudiced by the sentence imposed, which was to run from the expiration of the term he was then serving. At the time appellant in the instant case was sentenced, he had served only four months of a term of not less than two nor more than five years in a state institution on a conviction in another county. The sentence of three to six months pronounced by the lower court was to run *concurrently* with the much longer term appellant was already serving. Additionally, although the record is not explicit on this point, it appears that appellant's bail was continued on these Bucks County charges following his conviction, pending a pre-sentence investigation and sentencing. Appellant thus has not suffered and will not suffer any additional confinement resulting from the sentencing delay. The absence of serious prejudice to appellant and his failure to seek sentencing distinguish this case from *Giovengo,* and that case would not mandate reversal here.

4. The appellant in *Commonwealth v. Giovengo, supra,* was ultimately successful in gaining relief on his claim. *United States ex rel. Giovengo v. Maroney,* 194 F.Supp. 154 (W.D.Pa.1961).

5. The lower court, by opinion, explains "However, the defendant did not address these contentions to us and no record was made to explain or justify the delay, the issue was not framed or argued, and we did not have the opportunity to rule upon it." (Lower court opn. at 3).

*Commonwealth v. Stewart, supra,* is likewise separable from the case before us chiefly on the issue of prejudice. The appellant in *Stewart* was not sentenced until he had served an eleven year term on another conviction. Not only was the delay much longer than in the instant case, but the appellant had lost any chance to serve his second sentence concurrently with the earlier one. Additionally, the record in *Stewart* reflected the understanding of the judge, the district attorney and defense counsel that the appellant was to be returned for sentencing at the conclusion of his trial in another county. The failure to sentence the appellant until the completion of the sentence stemming from the second trial was clearly in violation of that understanding. The facts in this appeal differ greatly from those in *Stewart* and, were we to reach the merits of appellant's sentencing claim, *Stewart* would not require a finding that appellant's right to due process was violated.

■ Appellant also claims that the evidence was insufficient to convict him of possessing a firearm without a license. The facts adduced at trial were as follows. At approximately 2:20 a.m. on March 31, 1969, in response to a radio call, Officer Joseph McShane of the Bensalem Township Police undertook pursuit of a green 1954 Chevrolet automobile. Officer McShane was in a marked police cruiser equipped with two revolving red lights, which he employed at that time. During the chase, the lights of the fleeing vehicle were extinguished and it was driven directly through an intersection controlled by a stop sign. The pursuit ended when the Chevrolet, proceeding without lights at approximately forty miles per hour, abruptly came to rest against a concrete loading dock. Peering into the vehicle a few moments after the crash, Officer McShane observed appellant behind the steering wheel and one Raymond Dinardo in the front passenger's seat. Both men were unconscious. The officer also observed a .32 caliber pistol lying in the front, lefthand corner of the automobile floor, near appellant's left foot. Retrieving the weapon, Officer McShane determined that it was loaded and that the grips

from the handle were missing. Several pieces of plastic which fit the handle of the pistol were found in appellant's lap.

Appellant asserts that under *Commonwealth v. Townsend,* 428 Pa. 281, 237 A.2d 192 (1968) and a number of subsequent cases, the Commonwealth's case was defective in that it did not establish his intent to exercise control over the pistol. Because the weapon was not found on appellant's person the Commonwealth had to prove constructive possession, the requisite elements of which are " '. . . the power of control over the weapon and the intention to exercise this control.' " *Commonwealth v. Armstead,* 452 Pa. 49, 51, 305 A.2d 1, 2 (1973), *quoting Commonwealth v. Townsend, supra* 428 Pa. at 284, 237 A.2d at 194. It is evident that appellant had the ability to control the weapon. Upon review of the cases cited by appellant and comparison of the facts therein with the evidence produced in the instant case, we conclude that the evidence was sufficient to establish, albeit circumstantially, appellant's intent to exercise control over the gun.

In *Commonwealth v. Townsend, supra,* officers saw a gun fall from an automobile as a passenger exited. The passenger retrieved the gun and threw it on the back seat. The police ordered the two additional occupants, the driver and Townsend, out of the car. A subsequent search of the automobile revealed a .22 caliber derringer partially concealed under the passenger side of the front seat and a shotgun hidden under the hood. At trial, the testifying police officer was unable to state where Townsend had been seated in the car. The Commonwealth was thus unable to establish Townsend's proximity to the hidden derringer and had to "rely on its contention that mere presence in a vehicle containing two weapons is sufficient to sustain a finding of guilt." *Commonwealth v. Townsend, supra* 428 Pa. at 285, 237 A.2d at 194. The court, finding nothing to indicate Townsend's knowledge of the weapons other than his presence in the car, held the evidence insufficient to prove possession.

*Commonwealth v. Armstead, supra,* involved a stop of an automobile by Philadelphia police. The police asked the driver and the passenger, Armstead, to get out of the car. Officers in a second police vehicle which arrived on the scene observed a .38 caliber automatic pistol lying in the middle of the front seat. At trial, the Commonwealth and the defense stipulated that the driver's wife, if called, would have testified that she called the police on the day of the incident and informed them that her husband was carrying a gun and driving a car with the license number of the vehicle which was stopped. Further, she would have stated that she went to the police station and identified the seized pistol as her husband's. The court found no proof that the appellant knew of the presence of the weapon, an obvious prerequisite to intent to exercise control, and held the evidence of possession insufficient.

In *Commonwealth v. Duffy,* 235 Pa.Super. 413, 340 A.2d 869 (1975), the appellant was a passenger in a car stopped for inoperative taillights. The driver, who was not the registered owner, was unable to produce proper identification. He acceded to a police request and drove the car to a local station, accompanied by the appellant. A search of the vehicle, pursuant to the driver's consent, netted a pistol from far beneath the passenger's side of the front seat, a mask and gloves in the glove compartment and burglary tools in the rear seat. This court found the evidence insufficient to prove joint constructive possession, specifically lacking in proof of intent to exercise control.

Appellant cites *Commonwealth v. Wisor,* 466 Pa. 527, 353 A.2d 817 (1976), for the correct proposition that, whether the defendant is the driver or a passenger, in order to prove possession of contraband found in an automobile, the Commonwealth must prove ability to control and intent to exercise control. The facts of *Wisor,* however, are largely inapposite to the situation before us. Wisor was the driver of a car which a police officer observed parked in a shopping center lot. After noting what he regarded as suspicious activity by the appellant and five or six other young people

in and around the car, the officer moved in. When the upper section of the front passenger's seat was pushed forward to allow one of the persons in the back seat to exit, the officer saw a corncob pipe with an aluminum foil lined bowl in the space behind the seat. Laboratory analysis revealed marijuana residue in the pipe. No marijuana was found on the appellant's person or elsewhere in the car. The supreme court held that the presence of the pipe behind the passenger seat did not indicate the appellant-driver's knowledge of or intent to control the pipe, and that the appellant's status as driver-owner of the car did not supply the missing element of proof.

In the instant case, immediately following the Chevrolet's crash into the loading dock, police observed a gun in the lefthand front corner of the car's floor, next to appellant's left foot. The broken plastic grips to the gun were found in appellant's lap. Appellant alleged that the gun was kept beneath the front seat by the owner of the car and that he had no knowledge of its presence prior to the accident. No explanation was offered for the post-impact location of the gun grips.

"[W]hile the Commonwealth must establish every essential element of a crime beyond a reasonable doubt, this burden may be sustained by means of wholly circumstantial evidence." *Commonwealth v. Stanley,* 453 Pa. 467, 469, 309 A.2d 408, 410 (1973). The evidence in this case, while circumstantial, was certainly stronger than in the cases discussed above. The pistol was not discovered in a place of concealment, but was rather observed in plain view in extremely close proximity to appellant and in a position clearly within appellant's field of vision. The broken grips, which had been part of the weapon, were actually found on appellant's person. "The law is well settled that it is the exclu-. sive province of the trier of facts to pass upon the credibility of witnesses and the weight to be accorded their testimony." *Commonwealth v. Garvin,* 448 Pa. 258, 269, 293 A.2d 33, 39 (1972). As was its right, the fact finder clearly chose to disbelieve appellant's assertion that the gun was beneath the

seat and its presence unknown to him before the accident. From the presence of the pistol grips in appellant's lap, the fact finder could properly have inferred that the gun was located above the level of the seat and on or close to appellant's person prior to the impact. This inference would strongly indicate appellant's knowledge of the gun's presence and his intent to exercise control over it.

"The test of sufficiency [of the evidence] is whether, accepting as true all the evidence and all reasonable inferences therefrom, upon which if believed the fact finder could have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime charged." *Commonwealth v. Ford*, 472 Pa. 542, 544, 372 A.2d 821, 822 (1977).

The evidence herein was sufficient to establish beyond a reasonable doubt the elements of the offense of carrying an unlicensed firearm.

The judgment of sentence of the lower court is affirmed.

HOFFMAN, J., files a concurring opinion in which JACOBS, J., joins.

SPAETH, J., files a concurring and dissenting opinion in which HOFFMAN, J., joins.

HOFFMAN, Judge, concurring:

I concur in the result reached by the Majority. I agree with the Majority that appellant waived his assertion that his sentence should be vacated due to an unexplained, prolonged delay before sentencing. Appellant failed to raise this claim before the lower court. *Commonwealth v. Strand*, 464 Pa. 544, 347 A.2d 675 (1975). Accordingly, I would not reach the merits of appellant's claim and do not join in the Majority's discussion of this issue.

JACOBS, J., joins in this concurring opinion.

SPAETH, Judge, concurring and dissenting:

I agree with Judge HOFFMAN that since appellant has waived his speedy sentencing claim by failing to raise it

before the lower court, this court should not attempt to resolve that claim, which involves a complex question of constitutional law.

Furthermore, I disagree with the majority's resolution of appellant's sufficiency of the evidence claim. In my opinion, when a car going 40 miles per hour smashes into a concrete loading dock, the post-crash position of any light item within it cannot be considered indicative of anything at all. In *Commonwealth v. Wisor*, 466 Pa. 527, 353 A.2d 817 (1976), it was held that a prerequisite for proving possession of contraband in a car is proof that the purported possessor knew that the contraband was there. Without detailed evidence about the path that the car took—whether it may have swerved before the crash, the angles at which it hit the pier and perhaps ricocheted off it—and evidence about trajectories under such circumstances, I for one cannot say that the positions of a gun near the unconscious driver's foot and of the pieces of the gun's handle in his lap are sufficient proof that he had knowledge of, or intent to control the weapon.

HOFFMAN, J., joins in this opinion.