J-A12029-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
             Appellant   :
  :
  :
  :
             v.   :
  :
  :
  :
MASON FORTUNATO   :   No. 1378 WDA 2021

Appeal from the Order Entered November 1, 2021
In the Court of Common Pleas of Washington County Criminal Division at
No(s): CP-63-CR-0001625-2020

BEFORE:   MURRAY, J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:          **FILED: MAY 27, 2022**

The Commonwealth appeals from an order entered by the Court of Common Pleas of Washington County (trial court) granting the pretrial petition for *habeas corpus* filed by the defendant, Mason Fortunato (Appellee), and dismissing firearms possession charges against him. For the reasons set forth below, we affirm.

This case arises out of a law enforcement pursuit of a vehicle in which Appellee was riding and the discovery of a firearm in the vehicle after the vehicle crashed. On June 8, 2018, a state police trooper observed a Dodge Nitro SUV weaving erratically from the left lane to the right lane and passing traffic on the right shoulder. Trial Court Opinion, 11/1/21, at 1. The trooper

---

[*] Retired Senior Judge assigned to the Superior Court.

activated his lights and siren to stop the vehicle, but the vehicle took off at a high speed and the trooper pursued the vehicle. *Id.* at 1; N.T., 9/21/20, at 23. After the trooper chased the vehicle for eight or nine miles, during which the vehicle traveled at speeds in excess of 90 miles per hour, the vehicle attempted a right turn and crashed into a tanker truck. Trial Court Order and Opinion, 11/1/21, at 1-2; N.T., 9/21/20, at 7, 23-26.

There were three occupants in the vehicle, the driver, a front seat passenger, and Appellee, who was in the backseat. Trial Court Order and Opinion, 11/1/21, at 2; N.T., 9/21/20, at 7-8, 19, 23-25. All three occupants were seriously injured in the crash and only the driver was conscious after the accident; Appellee and the other passenger were found unconscious. Trial Court Order and Opinion, 11/1/21, at 2; N.T., 9/21/20, at 7-8, 11-12, 25, 28. A North Strabane Township police officer, who came to the scene of the accident to assist, found a loaded Beretta 9mm handgun with an obliterated serial number in the vehicle and turned it over to the state police, who were responsible for the investigation. Trial Court Order and Opinion, 11/1/21, at 2-3; N.T., 9/21/20, at 8-10, 13-14.

Appellee was charged with possession of a firearm with an altered manufacturer's number and carrying a firearm without a license.[1] A preliminary hearing was held on September 21, 2020, at which the

---

[1] 18 Pa.C.S § 6110.2(a) and 18 Pa.C.S. § 6106(a)(1), respectively.

Commonwealth presented testimony of the police officer who found the gun and the trooper who pursued the vehicle.

The police officer testified that when he looked into the vehicle after the crash, the gun was sitting on top of the center console between the driver's seat and the front passenger seat. N.T., 9/21/20, at 8-9, 13-14, 19. The officer testified that the gun was one to two feet away from all three occupants of the vehicle, and was within easy reach of Appellee, who was unconscious in the rear passenger seat when the gun was found. *Id.* at 7-9, 11-12, 17-22.

The trooper testified that while he was pursuing the vehicle, he saw the backseat passenger turn and look in his direction. N.T., 9/21/20, at 24. The trooper testified that the backseat passenger was sitting in the middle of the backseat when the chase began and was flung to right, behind the front passenger seat, during the chase when the vehicle hit a sharp bend in the road. *Id.* at 24-25, 27. The trooper also testified that the driver was moving around after the accident and that the two passengers were unconscious and did not move after the accident. *Id.* at 25, 28. In addition, the trooper testified that he did not believe that any fingerprint or DNA evidence was found on the gun. *Id.* at 26.

At the close of the preliminary hearing, the magisterial district judge bound the charges over for trial. N.T., 9/21/20, at 38. On January 19, 2021, the trial court granted the Commonwealth's motion to join the charges against

Appellee for trial with prosecutions of the driver of the vehicle and other passenger, both of whom were charged with firearms offenses based on possession of the same handgun. Motion for Joinder; 1/19/21 Trial Court Order.

On July 16, 2021, Appellee filed a pretrial petition for *habeas corpus* in the trial court asserting that the Commonwealth had failed to make out a *prima facie* case that Appellee possessed the handgun and seeking dismissal of both of the charges against him. On October 26, 2021, the trial court held a hearing on the petition for *habeas corpus* at which the Commonwealth presented and moved into evidence the preliminary hearing transcript and introduced additional evidence concerning DNA testing of the gun. N.T., 10/26/21, at 5-6, 10-13, 16; Commonwealth Ex. 2.

At this hearing, the trooper testified that he had been mistaken in his preliminary hearing testimony about whether any DNA evidence was found on the gun and identified a December 8, 2020 lab report of testing on the gun that stated that DNA of at least three individuals was found on the gun and compared three swabs of blood from the grip and muzzle of the gun and two other swabs of the gun to a known DNA sample from Appellee. N.T., 10/26/21, at 9-11; Commonwealth Ex. 2 at 1. The lab report stated that with respect to the two non-blood swabs from the gun, Appellee "cannot be excluded as a potential contributor" with respect to 18 genetic loci of the DNA and that

[b]ased on the results at these genetic loci this combination of DNA types is:
570 trillion (10E +12) times more likely in the Caucasian population
210 trillion (10E + 12) times more likely in the African American population
720 trillion (10E + 12) times more likely in the Hispanic population
to have originated from [Appellee] and another unknown, unrelated individual than if it had originated from two (2) other unknown, unrelated individuals in the population.

Commonwealth Ex. 2 at 1-2 ¶3. The report further stated that with respect to those two swabs, a Y chromosome DNA profile was obtained, that "[a]t the above listed genetic loci, the major component of this Y chromosome DNA mixture profile matches the Y chromosome DNA haplotype obtained from [Appellee]," and that "neither [Appellee] nor any of his paternally related male relatives can be excluded as the contributor of this DNA." *Id.* at 2 ¶5. The report stated that Appellee "cannot be included as a contributor" to the DNA found in the blood swabs from the grip and muzzle of the gun. *Id.* at 2 ¶4, 3 ¶6. The Commonwealth did not call any expert witness at the hearing to explain the meaning of any of the statements and results in the lab report.

On November 1, 2021, the trial court granted the petition for *habeas corpus* and dismissed all the charges, concluding that the Commonwealth's evidence was insufficient to show that Appellee was in constructive possession of the handgun because there were two other occupants of the vehicle who had access to the gun, it was speculative where the gun was when Appellee was conscious before the crash, and the lab report concerning DNA on the gun

could not be interpreted without expert testimony. Trial Court Order and Opinion, 11/1/21, at 7-9. The Commonwealth filed a motion for reconsideration, which the trial court denied on November 17, 2021. Trial Court Order and Opinion, 11/17/21.

The Commonwealth filed a timely notice of appeal on November 22, 2021.[2] The Commonwealth raises the following single issue for our review:

> Whether the trial court erred in ruling the Commonwealth's evidence was insufficient for a *prima facie* case.

Commonwealth's Brief at 17. We conclude that the trial court did not err in concluding that the Commonwealth failed to establish a *prima facie* case

A petition for *habeas corpus* challenges whether the evidence presented by the Commonwealth is sufficient to establish a *prima facie* case with respect to the charges against the defendant. ***Commonwealth v. Wyatt***, 203 A.3d

---

[2] This Court has held that the pretrial dismissal of criminal charges is interlocutory because the Commonwealth can refile the charges. ***Commonwealth v. Holston***, 211 A.3d 1264, 1268 (Pa. Super. 2019) (*en banc*); ***but see Commonwealth v. Harris***, 269 A.3d 534, 538-39 (Pa. Super. 2022). Under Rule 311(d) of the Pennsylvania Rules of Appellate Procedure, the Commonwealth has the right to appeal an interlocutory order in a criminal case if it certifies in its notice of appeal that the order "will terminate or substantially handicap the prosecution." Pa.R.A.P. 311(d); ***Holston***, 211 A.3d at 1268. Here, the Commonwealth's notice of appeal contains a statement that it "certifies in good faith [that] the order appealed from, granting defendant's pretrial Petition for Writ of Habeas Corpus, substantially handicaps and/or effectively terminates prosecution of Appellee/defendant on the specified charges." Notice of Appeal, Certification. This Court therefore has jurisdiction over this appeal under Rule 311(d) even if the trial court's order is interlocutory. ***Holston***, 211 A.3d at 1268.

1115, 1117 (Pa. Super. 2019); *Commonwealth v. Dantzler*, 135 A.3d 1109, 1112 (Pa. Super. 2016) (*en banc*). To establish a *prima facie* case, the Commonwealth must produce evidence of every element of the offense in question that would be sufficient, if presented at a trial and accepted as true, for the judge to permit the case to be decided by a jury. *Commonwealth v. Montgomery*, 234 A.3d 523, 533 (Pa. 2020); *Commonwealth v. Wroten*, 257 A.3d 734, 742 (Pa. Super. 2021); *Commonwealth v. Bostian*, 232 A.3d 898, 908 (Pa. Super. 2020). In determining whether the Commonwealth has established a *prima facie* case, this Court must view the evidence in the light most favorable to the Commonwealth's case and must accept all inferences reasonably drawn from the evidence that support a verdict of guilt. *Wroten*, 257 A.3d at 743; *Bostian*, 232 A.3d at 908; *Commonwealth v. Holston*, 211 A.3d 1264, 1269 (Pa. Super. 2019) (*en banc*). Speculation, suspicion, and conjecture, however, are not sufficient to support a *prima facie* case. *Bostian*, 232 A.3d at 908; *Holston*, 211 A.3d at 1269, 1275; *Wyatt*, 203 A.3d at 1120. Whether the trial court erred in holding that the Commonwealth failed to establish a *prima facie* case is a question of law subject to this Court's plenary review. *Wroten*, 257 A.3d at 742; *Holston*, 211 A.3d at 1269; *Dantzler*, 135 A.3d at 1112.

Appellee contended and the trial court found that the Commonwealth failed to show that Appellee possessed the handgun, which is an element of both of the charges against Appellee. The Commonwealth argues that its

evidence concerning the location where the handgun was found and the DNA report that it introduced were sufficient to make out a *prima facie* case that Appellant possessed the handgun. We do not agree.

The Commonwealth may prove possession of a firearm not only by evidence that the defendant actually had the firearm on his person, but also by evidence sufficient to show constructive possession of the firearm or constructive joint possession with another person. ***Commonwealth v. Parrish***, 191 A.3d 31, 36 (Pa. Super. 2018); ***Commonwealth v. McClellan***, 178 A.3d 874, 878-79 (Pa. Super. 2018); ***Commonwealth v. Bergen***, 142 A.3d 847, 852 (Pa. Super. 2016). Constructive possession of a firearm is the power to control the firearm and the intent to exercise that control. ***Parrish***, 191 A.3d at 36; ***McClellan***, 178 A.3d at 878; ***Commonwealth v. Hopkins***, 67 A.3d 817, 820 (Pa. Super. 2013). The fact that another person also has control and access does not negate the defendant's constructive possession. ***McClellan***, 178 A.3d at 878-79; ***Bergen***, 142 A.3d at 851-52; ***Hopkins***, 67 A.3d at 820-21. Constructive possession may be proven by circumstantial evidence. ***Parrish***, 191 A.3d at 36-37; ***McClellan***, 178 A.3d at 878; ***Commonwealth v. Smith***, 146 A.3d 257, 263 (Pa. Super. 2016).

Evidence that the defendant was in a vehicle where a firearm or other contraband was found is not sufficient to prove constructive possession absent evidence that the item was in a location over which the defendant had control and that the defendant knew that it was there. ***Commonwealth v. Wisor***,

353 A.2d 817, 818-19 (Pa. 1976) (evidence was insufficient to show that driver of car had constructive possession where the contraband was hidden under the back of the front passenger seat and there were five passengers in the car in addition to the driver); *Commonwealth v. Armstead*, 305 A.2d 1, 2 (Pa. 1973) (evidence was insufficient to prove constructive possession where there was no evidence that gun was visible while defendant was in the car); *Parrish*, 191 A.3d at 33, 37-38 (passenger in backseat of car did not have constructive possession of firearm under the passenger side front seat or firearm inside a black bag on the floor in front of the passenger side front seat where there was no evidence that passenger was aware that the firearms were in the car); *Commonwealth v. Boatwright*, 453 A.2d 1058, 1058-59 (Pa. Super. 1982) (front seat passenger did not have constructive possession of gun found on the floor of the backseat of car where there was another passenger in the backseat where the gun was found). "[M]ere presence in an automobile in which a weapon is found is not sufficient to prove that a defendant-passenger is in possession of the weapon." *Armstead*, 305 A.2d at 2.

In contrast, evidence that a firearm was in a vehicle in which the defendant was riding, was in plain view from where the defendant was seated, and was within the defendant's reach has been held sufficient to prove constructive possession. *Hopkins*, 67 A.3d at 819, 821 & n.2 (evidence was sufficient to prove constructive possession where defendant was driving car

and gun was visible between passenger side front seat and center console within defendant's arm's length reach, even though passenger testified that gun belonged solely to him); ***Commonwealth v. Parker***, 847 A.2d 745, 751-52 (Pa. Super. 2004) (evidence was sufficient to prove constructive possession where defendant was driving car and gun was sticking out from under passenger side front seat and visible from the driver's seat); ***Commonwealth v. Carter***, 450 A.2d 142, 143-44 (Pa. Super. 1982) (evidence was sufficient to prove constructive possession where defendant was driving car and gun was on floor in front of driver's seat); ***Commonwealth v. Bentley***, 419 A.2d 85, 86-87 (Pa. Super. 1980) (evidence was sufficient to prove constructive possession where defendant was driving car and gun was on floor in front of driver's seat and partially visible); ***Commonwealth v. McGraw***, No. 961 MDA 2018, at 2-3, 7-8 (Pa. Super. February 14, 2020) (unpublished memorandum) (evidence was sufficient to prove constructive possession where defendant was in the driver's side backseat of the car and gun was sticking out from under the back of the driver's seat, was visible from where defendant was sitting, and was near where one of his feet had been).

Here, the location where the handgun was found after the accident was visible and within Appellee's reach from where he was sitting in the backseat of the vehicle. N.T., 9/21/20, at 8-9, 13-14, 17-22, 24. The location of the gun after the accident, however, is insufficient by itself to show that Appellee

knew of the gun or had the ability to control it, as Appellant was rendered unconscious in the accident. *Id.* at 7-8, 11-12, 25. Although the Commonwealth did introduce evidence that Appellee was conscious before the accident, *id.* at 24, the Commonwealth introduced no evidence as to where the gun was at that time.

No reasonable inference can be drawn here that before the accident the handgun was in the location where it was found. The gun was found sitting on top of the center console, N.T., 9/21/20, at 8-9, 13, 19, not wedged between the console and another object. Before the gun was found at that location, the vehicle was in an eight or nine mile high-speed chase on roads that had at least one sharp bend that threw Appellee across the backseat and was in a violent front-end collision. *Id.* at 14, 23-25, 27. While the Commonwealth argues that the collision would have flung objects forward and therefore the gun was likely in the backseat, the Commonwealth submitted no evidence that excluded or made less likely the possibility that the gun was in the front seat area, ricocheted off the dashboard, and landed on the console, or that the driver, who was conscious and moving around after the accident, *id.* at 25, 28, placed the gun there after the accident.

*Commonwealth v. Rutherford*, 381 A.2d 952 (Pa. Super. 1977) (*en banc*) does not support the conclusion that the position of this gun after the accident showed constructive possession. In *Rutherford*, this Court held that the position where a gun was found in a vehicle after a police chase and

accident was sufficient to prove constructive possession by the driver, who was not the owner of the vehicle, even though there were two occupants in the vehicle, the accident involved a front-end collision at 40 miles per hour, and the driver was unconscious after the accident. *Id.* at 954-56. In *Rutherford*, however, the gun was found on the floor near the driver's foot, broken pieces of the gun's plastic grip were on the driver's lap, and the other occupant was also knocked unconscious in the accident. *Id.* at 955-56. Here, in contrast, the post-accident location of the gun was not within a confined area occupied by Appellee and there was another, conscious occupant of the vehicle who could have placed the gun on the console after the accident. *See* *Armstead*, 305 A.2d at 2 (fact that gun was found on front seat after driver and passenger got out of car did not show that gun was there when passenger was in the car as it was equally likely that the driver put the gun there when he got out of the car).

The only other evidence that Appellee possessed the handgun was a DNA report with no expert testimony explaining the meaning of the opinions and conclusions that it set forth. We conclude that, without expert testimony, this report was insufficient to show that Appellee possessed the gun.

Expert testimony that the defendant's DNA was found on a firearm can support a finding of constructive possession where others had access to the location where the firearm was found or the firearm is not found within the defendant's sight and reach. *Commonwealth v. Gomez*, 224 A.3d 1095,

1097-98, 1101-02 (Pa. Super. 2019) (constructive possession shown where firearm was found in a locked safe in a storage compartment behind the driver's seat in a vehicle in which three people were traveling, defendant driver's DNA matched DNA found on the firearm, and defendant driver had key to the safe); *McClellan*, 178 A.3d at 878-80 (DNA evidence linking defendant to gun found in basement area of house that he shared with other occupants who had access to basement area and evidence that defendant had access to basement area were together sufficient to prove constructive possession); *Commonwealth v. Stehley*, No. 1558 WDA 2018, at 1-4, 6-7 (Pa. Super. January 22, 2021) (unpublished memorandum) (constructive possession shown where gun was found near unconscious defendant in the debris field from a crash following a high-speed chase along with some of the defendant's clothes, defendant was the only occupant of the vehicle, and forensic DNA expert testified that DNA found on the gun produced a DNA profile consistent with defendant's DNA profile).

The fact that the DNA report found that some of the samples, which were from blood on the gun, did not have Appellee's DNA does not prevent positive findings concerning Appellee from having probative value. *See* *McClellan*, 178 A.3d at 879-80 (evidence that DNA found in two samples from firearm was defendant's rather than DNA from other occupants showed constructive possession even though other sample was more likely not defendant's DNA). The report, however, did not state in its positive findings

that Appellee's complete DNA profile matched the DNA found on the gun and opined instead that Appellee "cannot be excluded as a potential contributor" and that "neither [Appellee] nor any of his paternally related male relatives can be excluded as the contributor of this DNA." Commonwealth Ex. 2 at 1 ¶3, 2 ¶ 5. Although it stated probabilities trillions of times more likely that the DNA "originated from [Appellee] and another unknown individual than if it had originated from two (2) other unknown, unrelated individuals," the report limited its conclusions to only certain genetic loci. *Id.* at 1-2 ¶3. The Commonwealth did not call any expert to explain the meaning of these statements or whether the findings based on these particular genetic loci were a scientifically valid determination that Appellee's DNA was on the gun. We agree with the trial court that a court cannot interpret the DNA report and conclude that it shows that Appellee is a person who handled the gun without explanation from an expert in the field.

Without evidence as to the location of the handgun before the accident knocked Appellee unconscious or competent expert opinion that Appellee's DNA was on the gun, it is a matter of speculation whether Appellee had possession of or control over the handgun. Because speculation and conjecture are not sufficient to support a *prima facie* case, the trial court properly granted Appellee's petition for *habeas corpus*. **Holston**, 211 A.3d at 1275; **Wyatt**, 203 A.3d at 1120. Accordingly, we affirm the trial court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  5/27/2022