Commonwealth *v.* Jones, Appellant.

Submitted January 10, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Julian F. King,* for appellant.

*Maxine J. Stotland, Martin H. Belsky* and *Milton M. Stein,* Assistant District Attorneys, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, January 19, 1973:

The appellant, George Washington Jones, was indicted in separate bills for murder, voluntary manslaughter, involuntary manslaughter and arson. The charges grew out of a fire which took the life of a five-week-old infant, Sean McKinnon, and destroyed the interior of a dwelling house at 2010 Federal Street in Philadelphia.

When the issue was called for trial, Jones was first arraigned on the murder and arson indictments at the request of the district attorney and then at the direction of the court he was arraigned on the involuntary manslaughter indictment. Pleas of not guilty were entered to the three indictments. After trial the jury returned a verdict of guilty of arson and guilty of murder in the first degree. By direction of the court, Jones was found not guilty on the involuntary man-

slaughter indictment. Post-trial motions were denied, and on the murder conviction Jones was sentenced to life imprisonment as the jury's verdict directed. Sentence was not imposed on the arson conviction. An appeal was filed in this Court from the judgment imposed on the murder conviction. An appeal from the arson conviction was filed in the Superior Court and subsequently certified here. Both appeals were submitted to us on briefs and will be disposed of in this one opinion.

Since a final judgment was not entered on the arson conviction, the appeal in that case is premature and will be quashed. Cf. *Commonwealth v. Pollick*, 420 Pa. 61, 215 A. 2d 904 (1966).

We initially note that while the sufficiency of the evidence to sustain the conviction of murder in the first degree is not challenged, nonetheless, we have reviewed the record and are completely satisfied the trial testimony amply supports this conviction. From the testimony the jury was warranted in finding that after threatening to "burn the place down", Jones deliberately spilled gasoline over the floor of the first floor rooms of the house involved from a five-gallon can and then ignited the gasoline with a lit match. The conflagration followed.

In challenging the validity of the murder conviction and sentence imposed thereon, Jones principally asserts he was denied his constitutional right to a speedy trial[1]

---

[1] The right to a speedy trial is a fundamental right contained within the Sixth Amendment (applicable to the States through the Fourteenth Amendment), which provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense."

because the trial did not commence until thirty-two months after his arrest.

A lapse of thirty-two months between arrest and trial does not necessarily mean the accused has been denied a speedy trial in the constitutional sense.[2] But the courts should employ every reasonable means to see that such delays do not occur. See *Commonwealth v. Hamilton*, 449 Pa. 297, 297 A. 2d 127 (1972). The proper approach to determine if the appellant's Sixth Amendment rights have been violated[3] is an analysis of

---

[2] In *United States v. Ewell*, 383 U.S. 116, 86 S. Ct. 773 (1966), the United States Supreme Court stated: "We cannot agree that the passage of 19 months between the original arrests and the hearings on the later indictments itself demonstrates a violation of the Sixth Amendment's guarantee of a speedy trial. This guarantee is an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself. However, in large measure because of the many procedural safeguards provided an accused, the ordinary procedures for criminal prosecution are designed to move at a deliberate pace. A requirement of unreasonable speed would have a deleterious effect upon the rights of the accused and upon the ability of society to protect itself. Therefore, this Court has consistently been of the view that 'The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice.' Beavers v. Haubert, 198 U.S. 77, 87, 25 S. Ct. 573, 576, 49 L. Ed. 950. 'Whether delay in completing a prosecution . . . amounts to an unconstitutional deprivation of rights depends upon the circumstances . . . The delay must not be purposeful or oppressive,' Pollard v. United States, 352 U.S. 354, 361, 77 S. Ct. 481, 486, 1 L. Ed. 2d 293, '[T]he essential ingredient is orderly expedition and not mere speed.' " Id. at 120, 86 S. Ct. at 776. See also *Commonwealth v. Ditzler*, 443 Pa. 73, 277 A. 2d 366 (1971).

[3] The basic policy considerations underlying the Sixth Amendment speedy trial provision can be found in *Smith v. Hooey*, 393 U.S. 374, 89 S. Ct. 575 (1969), wherein it is stated: "The historic origins of the Sixth Amendment right to a speedy trial were traced in some detail by the Chief Justice in his opinion for the Court in

the facts of the instant case in connection with a consideration of the right of society, as well as those of the accused, to be protected from undue and oppressive incarceration prior to trial. In balancing these rights all relevant factors are to be considered, and in the recent case of *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182 (1972), the Court identified four such factors when it said: "A balancing test necessarily compels courts to approach speedy-trial cases on an *ad hoc* basis. We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Id. at 530, 92 S. Ct. at 2192.[4]

In *Barker* the Court characterized the length of delay as a "triggering mechanism". Under the facts of

---

Klopfer, supra, 386 U.S. at 223-226, 87 S. Ct. at 993-995, and we need not review that history again here. Suffice it to remember that this constitutional guarantee has universally been thought essential to protect at least three basic demands of criminal justice in the Anglo-American legal system: '[1] to prevent undue and oppressive incarceration prior to trial, [2] to minimize anxiety and concern accompanying public accusation, and [3] to limit the possibilities that long delay will impair the ability of an accused to defend himself.' " Id. at 377-78, 89 S. Ct. at 577.

[4] The Court further stated: "We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a funramental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution." Id. at 533, 92 S. Ct. at 2193.

the instant case the thirty-two-month delay is clearly a sufficient length of time to require us to inquire into the other factors which go into the balance.

A second factor, identified by the Court, in *Barker* to be considered in determining if the rights of the accused were violated is the reason for the delay in bringing him to trial. In relation to this the record sustains the following conclusions by the trial court.

While the case was not listed for trial in the first instance until eleven months after the arrest, Jones suffered no prejudice by this delay and in fact was not ready for trial during this period. A request for a psychiatric examination, the results of which could hopefully be used in defense of the charges was not made until eighteen months after the arrest. After the case received its initial trial listing, nine continuances were granted, five of these at the request of the defense and two at the request of the district attorney, to which no objection was entered and which in no way attempted to delay the trial in order to hamper the defense. Additionally, the case was removed from the trial list in one instance for the purpose of plea bargaining negotiations and in another instance for reasons not discernible from the record. While we do not look with favor on such delays, we are not persuaded that under the circumstances the delays constituted a violation of Jones' right to a speedy trial.

A third factor to be considered is the assertion of the right to speedy trial. The record shows that Jones never asserted this right until the day of the actual trial. As noted before, Jones did not object to the continuances granted to the Commonwealth, and in this regard it must also be kept in mind that he requested five of the continuances.

A fourth factor to be considered is the prejudice to the defendant. With respect to prejudice the United States Supreme Court stated the following in *Barker*:

"Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown." Id. at 532, 92 S. Ct. at 2193. With respect to this important factor, the instant record fails to establish the delays in any degree impaired Jones' ability to defend the charges. He states that two witnesses were unavailable as a result of the delay, however, an examination of the record establishes there is no merit in this assertion. These witnesses were in fact Commonwealth witnesses and the Commonwealth made every effort to locate them to testify as part of its case, but were unable to do so. Furthermore, one such witness had testified *for* the Commonwealth at the preliminary hearing (where she was cross-examined by the defense counsel) and Jones refused to use this testimony at trial. With respect to the second witness, the record shows the delay was not the cause of his absence, hence there was no causal connection between the delay and his unavailability since he was never available, not even at the preliminary hearing which was held right after the arrest.

After weighing and balancing all of the relevant factors, we rule Jones' constitutional right to a speedy trial was not violated.

Jones' next claim of error is founded on the trial court's failure to instruct the jury on voluntary manslaughter as a possible verdict. No request for such a charge was made and no objection for failure to so charge was entered. Moreover, no evidence was introduced on either side of the case which would warrant a verdict of voluntary manslaughter. Under such circumstances, the failure to submit the possibility of such a verdict to the jury was not reversible error. Cf. *Commonwealth v. Matthews*, 446 Pa. 65, 285 A. 2d 510 (1971).

Jones next claims the trial court erred in directing the jury to return a not guilty verdict on the involuntary manslaughter indictment.[5] At trial, Jones attempted to persuade the jury the fire was accidentally set by his act of placing the can of gasoline too near a "hot plate" and, at the most, he was guilty of negligence.

The Penal Code, Act of June 24, 1939, P. L. 872, §703, 18 P.S. §4703, of Pennsylvania in relevant part provides: "Whoever is convicted of involuntary manslaughter, happening in consequence of an unlawful act, or the doing of a lawful act in an unlawful way, is guilty of a misdemeanor. . . ." Under the proof the death involved resulted either from the perpetration of an arson or by virtue of an accident. This issue was made clear to the jury by the court and left entirely to the jury to resolve. Under the circumstances, we are not persuaded the complained-of instruction was preju-

---

[5] In this connection the court charged the jury as follows: "Now you notice I did not say anything about involuntary manslaughter. In all fairness to the defendant in this case, if you do not believe that death resulted because of the commission of arson, then he cannot be guilty of involuntary manslaughter because if you do not believe it happened by way of arson . . ., then you believe it happened the way he said it did and he is free of blame under those circumstances."

dicial error. See *Commonwealth v. Chasten,* 443 Pa. 29, 275 A. 2d 305 (1971).

Jones next complains the trial court misstated certain testimony in instructing the jury. Assuming this is correct, the inadvertence was not of sufficient consequence to constitute fundamental error or to impinge on Jones' right to a fair trial, and no objection was entered to the now complained-of instruction. Moreover, the court carefully charged it was the jury's recollection of the testimony that governed.

Next, it is complained the court erred in its charge on causal connection between the arson and the death when it stated: "If you believe beyond a reasonable doubt that he willfully and maliciously set fire to the dwelling, you must find the defendant guilty of arson. If you find the defendant guilty of arson, and you believe beyond a reasonable doubt that there was a *causal connection* between the arson and the death of Sean McKinnon, then under the statute the defendant is guilty of murder in the first degree. However, you may find him guilty of murder in the second degree." [Emphasis supplied.]

It is true the court did not adequately explain the concept of criminal causation, however, throughout the trial it was not disputed that the death was caused by the fire. Furthermore, counsel failed to call the inadequacy to the court's attention, or to request additional instructions. Additionally, no objection to the charge was entered. Under the circumstances, this assignment of error will not be sustained.

Finally, Jones attacks the application of the felony-murder rule in cases where death is only proximately related to the felony. This issue is carefully discussed in *Commonwealth v. Yuknavich,* 448 Pa. 502, 295 A. 2d 290 (1972), and elaboration is unnecessary here.

Judgment of sentence affirmed.

Appeal in No. 384 is quashed.

CONCURRING OPINION BY MR. JUSTICE POMEROY:

I concur in the decision of the court, and join in its opinion except for the portion dealing with the court's failure to instruct on voluntary manslaughter. I think that, if requested, it would have been reversible error on the part of the trial court not to charge that voluntary manslaughter was a verdict which was within the power of the jury to return, even though there was no evidence to support such a finding. See *Commonwealth v. Matthews,* 446 Pa. 65, 285 A. 2d 510 (1971) (dissenting opinions of Mr. Justice ROBERTS and of the writer); *Commonwealth v. Banks,* 447 Pa. 356, 364, 285 A. 2d 506 (1971) (dissenting opinion of the writer, joined by Mr. Justice ROBERTS); *Commonwealth v. Davis,* 449 Pa. 468, 297 A. 2d 817 (1972) decided this day (opinions of Mr. Justice ROBERTS and of the writer in opposition to order of affirmance); and *Commonwealth v. Kenney,* 449 Pa. 562, 297 A. 2d 794 (1972), decided this day (dissenting opinion of Mr. Justice ROBERTS, joined by the writer).

Mr. Justice ROBERTS joins in this concurring opinion.

---

DISSENTING OPINION BY MR. JUSTICE MANDERINO:

I dissent. It was error for the trial court not to charge the jury on involuntary manslaughter. Involuntary manslaughter is defined as the killing of another without malice and unintentionally, but in the course of some unlawful act not amounting to a felony . . . or negligently doing some act lawful in itself. *Commonwealth v. Mayberry,* 290 Pa. 195, 138 A. 686 (1927). The jury, as triers of fact, could have found that the death occurred as a result of a negligent act, since there was evidence that the fire was accidently set by the act of placing the can of gasoline too near the "hotplate". It was within the province of the jury to either believe or disbelieve this testimony, and decide

whether negligence was present. The court erred by taking this consideration away from the jury by instructing them not to consider involuntary manslaughter as a possible verdict.

The trial court also improperly deprived the defendant of a jury trial on the issue of malice which is a necessary element of murder and must always be decided by the jury. See *Commonwealth v. Yuknavich*, 448 Pa. 502, 295 A. 2d 290 (1972) (concurring opinion by Justice MANDERINO).