417 A.2d 597

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Gary Gerald POUNDS, Appellant.**

Supreme Court of Pennsylvania.

Submitted March 3, 1980.

Decided July 3, 1980.

John H. Corbett, Jr., Asst. Public Defender, H. Patrick McFalls, Pittsburgh, for appellant.

Robert E. Colville, Dist. Atty., Robert L. Eberhardt, Deputy Dist. Atty., Charles W. Johns, Asst. Dist. Atty., Pittsburgh, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

EAGEN, Chief Justice.

On July 9, 1976, a jury found Gary Pounds guilty of murder of the first degree, possession of an unlicensed firearm, crime with a firearm, two counts of theft, and one count of receiving stolen property. Post-verdict motions were denied on June 9, 1978, and, on June 27, 1978, Pounds was sentenced to life imprisonment on the murder conviction. Sentence was suspended on the other offenses. This appeal is from the judgment imposed on the murder conviction.

The trial record discloses the following:

At 1:28 a. m. on July 24, 1975, the body of Joe McGuane, Pound's father-in-law, was found at Gregg Station where he was employed as an oil tank gauger and truck driver. The cause of death was later determined to be multiple gunshot wounds of the head, face, neck, and hands. Analysis of bullet fragments removed from the body indicated the bullets had come from a revolver of .32 or larger calibre. The victim was last seen alive at 6 a. m. on July 23, 1975 and several phone calls to the victim from his supervisor made between 7 and 8 a. m. had gone unanswered.

Ann McGuane, the victim's wife, testified that she was awakened on July 23, 1975 at approximately 6:30 a. m. by

the sound of their garage door going up and that she roused her son, Terry McGuane, told him to get his gun, and then called the police. Terry McGuane testified that, after being awakened by his mother and getting his shotgun, he saw Gary Pounds run past the side of the house towards a wooded area to the rear, chased him, and fired a shot at him. The police arrived at approximately 7 a. m. and found in the wooded area, *inter alia*, a cold six-pack of Duquesne beer, the brand Gary Pounds normally drank, and a windbreaker containing three spent and three live .38 calibre ammunition. In the garage underneath Mrs. McGuane's automobile, the officers found a stained work shirt similar to those worn by Gary Pounds which contained a partial pack of Phillip Morris cigarettes, the brand Gary Pounds normally smoked. Subsequent analysis of blood stains on the shirt indicated the blood was consistent with Joe McGuane's blood type.

Gary Pounds was arrested on the evening of July 24, 1975 at which time a .38 special revolver was found in the car he was driving. The revolver had been stolen from a trailer owned by Dan Leonard.

Beverly Herrick, a friend of Pounds, testified that Pounds had come to a motel where she resided at approximately 10:30 a. m. on July 23, 1975; that he asked her to follow him in her automobile to a strip mine so he could dispose of the automobile he was driving (later determined to have been the victim's, Joe McGuane's) for a friend in order to collect the insurance; that, after disposing of the McGuane vehicle, the two retrieved Pounds' automobile from behind a culm pile in the vicinity of Gregg Station; and, that they dropped Pounds' automobile off at a local shopping mart. Herrick also testified Pounds had told her he had killed his father-in-law.

Jerome Harris, an inmate of the jail in which Pounds was originally incarcerated, testified Pounds had told him he, Pounds, had shot Joe McGuane some time between 6 and 7 a. m. on July 23, 1975 after an argument.

Testifying in his own behalf, Pounds denied shooting Joe McGuane, disposing of his automobile, having been at the

McGuane home on the morning of July 23, 1975, and having told Beverly Herrick or Jerome Harris that he killed Joe McGuane. He further testified that, during the night of July 22 and morning of July 23, he slept in his automobile which was parked in front of the trailer in which the Leonard family resided, some distance from Gregg Station; that he awoke before 8 a. m. and then drove to his mother's house where he sat alone on the porch until Beverly Herrick arrived; and, that he had spent the next 24 hours with Ms. Herrick.

Initially, Pounds contends the trial court erred in denying his motion to dismiss based on a claimed violation of his right to a speedy trial due to a delay of nearly two years between the jury's verdict and his sentencing. Although in dicta in the opinion announcing the decision of the court in *Commonwealth ex rel. Holly v. Ashe*, 368 Pa. 211, 219, 82 A.2d 244, 248 (1951), Mr. Justice Charles Alvin Jones stated: "The suggestion that the constitutional right of an accused to a speedy trial requires that he be sentenced timely is, of course, true," our Court has not expressly held that sentencing is part of trial for Sixth Amendment purposes or for purposes of Article I, § 9 of the Pennsylvania Constitution.[1] Moreover, the United States Supreme Court has also failed to squarely decide whether sentencing is included within the Sixth Amendment right to a speedy trial. See *Pollard v. U. S.*, 352 U.S. 354, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957); *Dickey v. Florida*, 398 U.S. 30, 44, 90 S.Ct. 1564, 1572, 26 L.Ed.2d 26 (1970). (Concurring opinion by Mr. Justice Brennan in which Mr. Justice Marshall joined.) However, as did that Court in *Pollard v. U. S.*, supra, 352 U.S. at 361, 77 S.Ct. at 486, we will assume *arguendo* that sentence is part of trial for purposes of a defendant's right to a speedy trial.[2]

---

**1.** Article I, § 9 of the Pennsylvania Constitution states: "In all criminal prosecutions the accused hath a right to . . . a speedy public trial . . . ."

**2.** This approach has been taken by a number of courts. See e.g. *Brady v. Superintendent Anne Arundel Co. Det. Ctr.*, 443 F.2d 799 (4th Cir. 1971); *Brooks v. United States*, 423 F.2d 1149 (8th Cir. 1970), *cert. denied*, 400 U.S. 872, 91 S.Ct. 109, 27 L.Ed.2d 111 (1971);

■ In that context, whether a delay in sentencing amounts to an unconstitutional deprivation of a speedy trial right depends upon the circumstances. *Pollard v. U. S.,* supra; accord, *United States v. Ewell,* 383 U.S. 116, 120, 86 S.Ct. 773, 776, 15 L.Ed.2d 627 (1966). See also *Commonwealth ex rel. Holly v. Ashe,* supra. Such delay must not be purposeful or oppressive. *Pollard v. U. S.,* supra; accord, *United States v. Ewell,* supra. The principal factors to be considered in determining whether a delay in sentencing has deprived a defendant of his right to a speedy trial are length of delay, reason for the delay, assertion of the right, and resulting prejudice to interests protected by the right to a speedy trial.[3] Accord, *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *Commonwealth v. Jones,* 450 Pa. 442, 299 A.2d 288 (1973); *Commonwealth v. Hamilton,* 449 Pa. 297, 297 A.2d 127 (1972).[4]

In the present case, the jury returned its verdict on July 9, 1976, and Pounds was sentenced on June 27, 1978, a delay of almost two years. This period of delay did not extend beyond the collective maximum term of imprisonment for

*United States v. Tortorello,* 391 F.2d 587 (2d Cir. 1968); *United States v. Grabina,* 309 F.2d 783 (2d Cir. 1962) *cert. denied,* 374 U.S. 836, 83 S.Ct. 1885, 10 L.Ed.2d 1057 (1963); *State v. Fennell,* 218 Kan. 170, 542 P.2d 686 (1975).

3. Pa.R.Crim.P. 1100 was promulgated by this Court to establish a presumptive standard of time within which a defendant must normally be brought to trial. Since that standard is not applicable to the delay claimed instantly, we revert to the analysis used prior to its adoption.

4. In *Barker v. Wingo,* supra, 407 U.S. at 553, 92 S.Ct. at 2193, the Court further stated:
   "We regard none of the four factors identified above as either necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process."
   See also *Commonwealth v. Jones,* supra, 450 Pa. at 447, n.4, 299 A.2d at 291, n.4.

the offenses of which Pounds was convicted[5] and, thus, does not render sentencing, prima facie, invalid. *Commonwealth ex rel. Wilhelm v. Morgan*, 278 Pa. 395, 123 A. 337 (1924); *Commonwealth v. Giovengo*, 188 Pa.Super. 220, 146 A.2d 629 (1958). See also *Commonwealth v. Rutherford*, 252 Pa.Super. 348, 381 A.2d 952 (1977). However, this delay is sufficient to trigger further inquiry. See *Barker v. Wingo*, supra; *Commonwealth v. Jones*, supra.

■ The second factor to be considered is the reason for the delay. Here, the record shows that Pounds' post-verdict motions were filed on July 14, 1976, argued May 3, 1977, and denied on June 9, 1978; and that he was sentenced 18 days later. Although post-verdict motions are to be disposed of prior to sentencing, see comment to Pa.R.Crim.P. 1405; *Commonwealth v. Souder*, 376 Pa. 78, 101 A.2d 693 (1954); *Commonwealth ex rel. Holly v. Ashe*, supra; *Commonwealth v. Middleton*, 242 Pa.Super. 421, 364 A.2d 342 (1976), that in itself does not justify an inordinate delay in sentencing. The record reveals the 9½ months between the filing of post-verdict motions and argument on the motions[6] was largely chargeable to Pounds' inability to obtain a trial transcript due to his failure to pay for it.[7] However, Pa.R. Crim.P. 1122 requires the disposition of post-verdict motions within 30 days of argument except under unusual circumstances. In this case, post-verdict motions were not decided for 13 months after argument. The only explanations offered of record were the presiding judge's heavy caseload and his admittedly inadequate administration of those cases. While the former offers some excuse for the delay, these

5. On the murder conviction alone, Pounds faced a mandatory term of life imprisonment.

6. Pa.R.Crim.P. 1123(a) directs argument be scheduled and heard promptly after the filing of post-verdict motions.

7. Pounds, at that time, was represented by private counsel and his request to have the Commonwealth or county pay for the transcript was denied. Although the judge who presided during Pounds' trial and post-trial proceedings subsequently arranged for Pounds' receipt of the transcript, no claim is made that the in forma pauperis petition was improperly denied.

reasons do not justify a delay of a year beyond the time required for disposition of post-verdict motions.[8]

The next circumstance of importance is whether Pounds asserted his right to be sentenced without unreasonable delay or, more appropriately, requested timely disposition of his post-verdict motions. Although Pounds apparently sent several letters to the court, the substance of these letters does not appear of record and he did not file any formal petition seeking immediate decision on his post-verdict motions or immediate sentencing.[9]

The final factor for our consideration is the prejudice from the delay. Pounds complains he has been prejudiced by his incarceration during the elongated period between conviction and sentencing. After his conviction for murder of the first degree, Pounds was subject to a mandatory sentence of life imprisonment on that charge as prescribed by statute. Although a defendant is generally not released on bail after conviction of such an offense, where, as here, there has been an unreasonable delay in the disposition of post-verdict motions, it is within the discretion of the judge to allow bail. Pa.R.Crim.P. 4010(A)(1). However, as noted, Pounds did not petition for release on bail, and his incarceration during that period, thus, cannot be considered prejudice resulting from the delay in the post-verdict proceedings.

Pounds also claims prejudice by virtue of the resulting delay in the consideration of his appeal. However, that is not the type of interest which the right to a speedy trial protects.[10] See Barker v. Wingo, 407 U.S. at 532, 92 S.Ct. at

---

**8.** Unintentional delays caused by overcrowded court dockets are among factors to be weighed less heavily than intentional delay calculated to hamper the defense in determining whether the constitutional right to speedy trial has been violated. Strunk v. United States, 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973); Barker v. Wingo, supra.

**9.** We also note no demand for bail was made pursuant to Pa.R. Crim.P. 4010.

**10.** The interests which have been identified are: (1) prevention of oppressive pretrial incarceration; (2) minimization of an accused's anxiety and concern; and, (3) limitation of the possibility that the

2193 (prejudice should be assessed in the light of those interests of defendants which the speedy trial right was designed to protect).

■ Our review of these circumstances surrounding the delay in sentencing Pounds convinces us that the delay was neither purposeful nor oppressive and that there has been no violation of Pounds' right to a speedy trial which would presently entitle him to relief.

■ While we do not condone the delay in the post-verdict proceedings, we are not convinced it mandates a dismissal of the charges. Our decision is influenced, in particular, by the fact that after his conviction, Pounds was, by statute, subject to a mandatory life sentence; that part of the delay was due to Pounds' failure to pay for a transcript which he was not entitled to have provided without charge; by the case-load confronting the trial court; that there was no formal demand for speedy disposition of post-verdict motions; and, by the lack of identified prejudice to interests of Pounds which a speedy trial right is designed to protect.[11]

defense will be impaired. *Barker v. Wingo*, 407 U.S. at 532, 92 S.Ct. at 2193; *United States v. Ewell*, 383 U.S. at 120, 86 S.Ct. at 776; *Commonwealth v. Jones*, 450 Pa. at 449, 299 A.2d at 292.

Further, while we have herein assumed *arguendo* that the right to a speedy trial protects an accused through the completion of a prosecution in sentencing, see *Pollard v. United States*, supra, such protection has not been held to extend to appeal. *Rheuark v. Shaw*, 477 F.Supp. 897 (N.D.Tex.1979); *Colunga v. State*, 527 S.W.2d 285 (Tex. Cr.App.1975); *State v. Lagerquist*, 254 S.C. 501, 176 S.E.2d 141 (1970), *cert. denied*, 401 U.S. 937, 91 S.Ct. 912, 28 L.Ed.2d 216 (1971); *State ex rel. Mastrian v. Tahash*, 277 Minn. 309, 152 N.W.2d 786 (1967). See *Griffin v. Illinois*, 351 U.S. 12, 18, 76 S.Ct. 585, 590, 100 L.Ed. 891 (1956) (State not required by Federal Constitution to provide appellate courts or a right to appellate review at all.)

11. We note that, within the body of his argument on his speedy trial claim, Pounds also claims his right to due process has been denied due to delay in the consideration of his appeal resulting from the delay in his sentencing and a further lapse of 17 months between the filing of his notice of appeal and the filing of an opinion by the judge presiding at his trial and post-trial proceedings. However, this contention was not set out or suggested by Pounds' statements of questions involved nor was it adequately developed in the body of his argument. Therefore, we will not consider it. Pa.R.A.P. 2115, 2118. Moreover, were we to consider the issue, the same considerations

If the charges are not dismissed, then Pounds maintains he is entitled to a retrial because of several alleged errors in the 1976 trial. Among such errors is the trial court's refusal of a request to instruct the jury on the defense of alibi. We agree this was error and of sufficient prejudice to require a new trial.[12]

■ We have previously stated:

"[a]libi is a defense that places the defendant at the relevant time in a different place than the scene involved and so removed therefrom as to render it impossible for him to be the guilty party."

*Commonwealth v. Whiting*, 409 Pa. 492, 498, 187 A.2d 563, 566 (1963). A defendant is entitled to an alibi instruction when evidence of alibi, as defined above, has been introduced. *Commonwealth v. Bonomo*, 396 Pa. 222, 151 A.2d 441 (1959); *Commonwealth v. Van Wright*, 249 Pa.Super. 451, 378 A.2d 382 (1977). Although an alibi defense is generally presented with accompanying alibi witnesses or other evidence placing the defendant at a place other than the scene

applicable in the context of a speedy trial claim are applicable to a claimed due process violation based on delays in proceedings. See *United States v. Campbell*, 531 F.2d 1333, 1335 (5th Cir. 1976). Cf. *Rheuark v. Shaw*, n. 9, supra; *Doescher v. Estelle*, 454 F.Supp. 943 (N.D.Tex.1978); *Petition of Williams*, 393 N.E.2d 353 (Mass.1979). Hence, given our resolution of Pounds' claimed violation of his right to a speedy trial by delay in sentencing, the requirement that sentence be imposed before an appeal is taken, and the fact that Pounds has not indicated how his appeal was prejudiced, this contention is without merit.

12. In view of our disposition of this issue, we need not reach or discuss Pounds' remaining assignments of error: (1) that the trial court deprived him of the opportunity to present a defense by refusing to allow him to treat Ann McGuane and Maureen Pounds as *hostile witnesses and by prohibiting questioning concerning Terry McGuane's parentage* and his alleged prior physical abuse of and threats to Ann and Joe McGuane; (2) that the trial court erred in denying his application to sever the indictments for firearm violations and a firearm theft from the indictment for homicide; (3) that the trial court erred in allowing the Commonwealth to introduce evidence of his prior assault on his wife and a male companion of hers; and, (4) that his trial counsel was ineffective for failing to properly prepare for trial, introduce the work records of the deceased, and call certain witnesses for purposes of rebuttal.

of the crime at the time of its commission, the testimony of the accused may, by itself, be sufficient to raise an alibi defense and entitle him to an appropriate jury instruction. See *People v. Jones*, 47 Ill.2d 135, 265 N.E.2d 125 (1970); *State v. Yager*, 416 S.W.2d 170 (Mo.1967); *Henderson v. State*, 207 Ga. 206, 60 S.E.2d 345 (1950). See also, *Commonwealth v. Bonomo*, supra (defendant has no burden of proving alibi); *Commonwealth v. Van Wright*, supra (defendant not entitled to an alibi instruction unless, viewing the evidence in the light most favorable to the defendant, there is some testimony in the record, introduced by either the defense or the Commonwealth, raising the possibility of an alibi defense).

■ The evidence at trial indicated Joe McGuane was killed between 6 and 7 a. m. on July 23, 1975. Pounds testified that, on the night of July 22, 1975, he slept in his car in front of a house trailer owned by Carol and Dan Leonard; that he arose sometime before 8 a. m. on the 23rd, possibly around 6 a. m.,[13] and drove to his mother's house, arriving sometime before 8 a. m.,[14] where he sat alone on the porch until Beverly Herrick drove up; that he left his mother's with Herrick, also before 8 a. m.; and, that he spent the next 24 hours with her driving to various places and at her motel room. While Pounds was unable to associate precise times with his actions during the early daylight hours of July 23, 1975, or when Joe McGuane was murdered, his testimony covered the time from which he went to sleep on the 22nd to 9 a. m. on the 24th and placed him at locations distinct from the vicinity of the crime. Pounds' testimony was, thus, sufficient to raise an alibi defense, *Commonwealth v. Whiting*, supra, and entitled him to an

13. Pounds knew it was before 8 a. m. because Dan Leonard had not yet left for work which started at 8 a. m. He surmised the 6 a. m. time from his knowledge that his ex-wife, who lived across the street from the Leonards, left for work around 6 a. m. and his belief that he had been awakened by a car door slamming.

14. Pounds based this estimate of the time on his knowledge that his mother's boarder normally arose at 8 a. m., unlocked the front door and put down the porch awning, neither of which had been done when he arrived.

alibi instruction as he requested.[15] *Commonwealth v. Bonomo*, supra; *Commonwealth v. Van Wright*, supra.

In *Commonwealth v. Bonomo*, supra, 396 Pa. at 231–232, 151 A.2d at 446, we stated:

"[where the defendant traverses one of the essential elements necessary for conviction], it will be the duty of the trial judge to carefully instruct the jury as to the relationship of the evidence of the prosecution and the evidence of the defendant as each bears upon the essential elements of the crime charged."

See also, *Commonwealth v. Van Wright*; Pennsylvania Standard Jury Instructions, Criminal, § 3.11. Here, the trial court instructed the jury, *inter alia*, that a presumption of innocence existed; that the Commonwealth has the burden of proving each element of each offense beyond a reasonable doubt; that a reasonable doubt could arise from the evidence present or lack of evidence; that the defendant does not have the burden of proving his innocence; and, that the jury has a duty to weigh the credibility of the testimony presented. However, the trial court failed to instruct the jury that it should acquit if Pounds' alibi evidence, even if not wholly believed,[16] raised a reasonable doubt of his presence at the scene of the crime at the time of its commission and, thus, of his guilt. See *Commonwealth v. Bonomo*, supra; *Commonwealth v. Van Wright*, supra. *Pa. Standard Jury Instructions*, supra. Where an alibi defense is presented, such an instruction is necessary due to the danger that the failure to prove the defense will be taken by the jury as

**15.** Pounds' testimony concerning his whereabouts during the early daylight hours of July 23, 1975 was not supported by any other evidence and was, in part, contradicted by Beverly Herrick, who testified she did not see Pounds on the 23rd until approximately 10:30 a. m. when he came to her room at a local motel. However, this does not affect the sufficiency of his testimony for the purpose of raising an alibi defense. See *Commonwealth v. Bonomo*, supra; *Commonwealth v. Van Wright*, supra. See also, *State v. Reynolds*, 517 S.W.2d 182 (Mo.App.1974).

**16.** This is so because the defendant bears no burden of proof on alibi, *Commonwealth v. Bonomo*, supra.

634

a sign of the defendant's guilt.[17]   See *United States v. Ragghianti*, 560 F.2d 1376 (9th Cir. 1977); *United States v. Burse*, 531 F.2d 1151 (2d Cir. 1976).   See also, *Commonwealth v. Bonomo*, supra, *Commonwealth v. Van Wright*, supra; *United States v. Booz*, 451 F.2d 719 (3rd Cir. 1972).

General instructions on the Commonwealth's burden of proving each element of the offense beyond a reasonable doubt, the absence of a burden of proof on the defendant, and assessing the credibility of witnesses do not adequately protect against this danger.   See *Commonwealth v. Van Wright*, supra; *United States v. Burse*, supra.   Cf. *Commonwealth v. Bonomo*, supra; *United States v. Booz*, supra; *United States v. Alston*, 551 F.2d 315 (D.C.Cir. 1976).   Furthermore, by refusing to give the requested instruction, the trial court, in effect, deprived Pounds of a substantive defense.   Thus, the trial court erred in refusing to instruct on alibi.

Although there is substantial evidence of guilt on the record, we are unable to conclude the failure to instruct on alibi could not have contributed to the jury's verdict.   The jury was not told it did not have to wholly credit Pounds' alibi testimony in order for the testimony to create a reasonable doubt of his guilt.   Hence, the jury may have convicted merely because it did not believe his alibi testimony.   In the absence of an instruction that they did not have to wholly believe Pounds to acquit, the jury may have inferred guilt from his failure to clearly establish his alibi.   We are, therefore, unable to find the error harmless and must reverse.   See *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978).

Judgment reversed, and a new trial is ordered.

LARSEN, J., filed a dissenting opinion in which KAUFF-MAN, J., joins.

17.   Such an inference contravenes the presumption of innocence and the Commonwealth's burden of proving the offense beyond a reasonable doubt.   See *Commonwealth v. Bonomo*, supra; *United States v. Ragghianti*, 560 F.2d 1376 (9th Cir. 1977).

LARSEN, Justice, dissenting.

I dissent.

The majority correctly describes the alibi defense:

[a]libi is a defense that places the defendant at the relevant time in a different place than the scene involved *and so removed therefrom as to render it impossible for him to be the guilty party.*

*Commonwealth v. Whiting,* 409 Pa. 492, 498, 187 A.2d 563, 566 (1963) (emphasis supplied). Nevertheless, the majority then proceeds to ignore the latter part of that description and to misapply the law to the testimony in the instant case. According to appellant's own testimony, during the crucial hour within which the decedent met his fate, appellant was alone, in or near his automobile, and within ten miles (all of which would be traversed on rural roads) of both where the body was found at decedent's place of employment and the decedent's home. This is not an alibi because, even if appellant had traveled to and been where he claimed, he was not so far removed from the scene of the crime as to "render it impossible for him to be the guilty party." If two persons are in a house and one is found dead in the bedroom, the jury should not be instructed on the alibi defense merely because the other claimed that he never left the kitchen. That is precisely the situation in this case, and it is a misnomer to suggest that appellant's testimony was in the nature of an alibi. In fact, a fair reading of appellant's testimony shows it was no more than a general denial of guilt. He was not, therefore, entitled to a jury instruction on the alibi defense.[1]

Accordingly, I would affirm the judgment of sentence.

KAUFFMAN, J., joins in this Dissenting Opinion.

1. Because of my disposition of this issue, I need not address appellant's claim that his constitutional rights were transgressed by the 30 month delay in this appeal which was caused by the trial judge's failure to timely dispose of post-verdict motions and file an opinion, or the internal inconsistency of the majority opinion. (That is, the majority's simultaneous conclusions that, on the one hand, appellant did not receive a fair trial and, on the other hand, that his rights were

not infringed while he was incarcerated for the 30 months this appeal was delayed by the trial judge for no good reason, defy both logic and common sense.)   Since I find the jury instructions adequate, the trial judge's delay of this appeal, if error, would be harmless as to appellant who is subject to a mandatory sentence of life imprisonment.