J. S33011/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :     IN THE SUPERIOR COURT OF
                                        :           PENNSYLVANIA
            v.                 :
                                          :
ARJUNA MASON A/K/A TONY MASON,   :      No. 507 EDA 2014
                                          :
           Appellant      :

Appeal from the Judgment of Sentence, January 10, 2014,
in the Court of Common Pleas of Philadelphia County
Criminal Division at Nos. CP-51-CR-0009930-2012,
CP-51-CR-0009933-2012

BEFORE:  FORD ELLIOTT, P.J.E. DONOHUE AND LAZARUS, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:       **FILED AUGUST 10, 2015**

Arjuna Mason a/k/a Tony Mason appeals the judgment of sentence of January 10, 2014, following his conviction of first-degree murder, aggravated assault, and related charges. After careful review, we affirm.

The charges related to two separate incidents the night of October 21-22, 2011. In the first incident, at approximately 11:45 p.m., appellant attempted to rob the victim, Ronald Parrish ("Parrish"), outside a Chinese store at 6605 Chew Avenue. The trial court has summarized the facts related to this incident, in part, as follows:

> Ronald Parrish testified that, on October 21, 2011, he left to go to a Chinese store located at 6605 Chew Avenue to purchase a cigar, commonly referred to as a "Dutch." Mr. Parrish admitted that the cigar was purchased to smoke a joint. Mr. Parrish testified that, at approximately

11:45 pm, he arrived at the Chinese store, exited his 2001 Ford Taurus, entered the store, purchased the cigar, and left the store to return to his vehicle. Mr. Parrish estimated that he was in the store for roughly two to three minutes before returning to his vehicle. As Mr. Parrish exited the store, Mr. Parrish noticed a person approaching him from the opposite side of the street with a raised gun aimed at him. Mr. Parrish immediately darted around his vehicle to the driver's side of his car and tried to start his vehicle so that he could get away. As Mr. Parrish was trying to escape, the person who had been approaching Mr. Parrish was outside the closed driver's side window, displaying the weapon inches from Mr. Parrish's head and ordering Mr. Parrish to get out of the car and to "give it up" or "give that shit up." Mr. Parrish was able to start his vehicle and pull away, but the person fired several shots [Footnote 2] at Mr. Parrish. Two of the shots hit Mr. Parrish—one entered the middle of his back and made contact with his right lumber [sic] spine and the second shot hit his shoulder. Mr. Parrish, injured and still bleeding, drove himself to Chestnut Hill Hospital where medical professionals transferred Mr. Parrish to Abington Hospital, the closest hospital with a trauma unit.

> [Footnote 2] The crime scene unit found ten (10) fired cartridge casings [("FCC's")] at the scene.

Trial court opinion, 8/14/14 at 3-4 (citations to the transcript omitted). Parrish described the shooter to police and subsequently picked appellant out of a photo array as an individual who "looks like" the shooter. (*Id.* at 5.) Police also secured surveillance video from a neighboring business depicting the perpetrator wearing a black leather jacket with white trim and a distinctive design on the back, as described by Parrish. (*Id.* at 5-6.) Four projectiles were retrieved from Parrish's vehicle. (*Id.* at 6.)

Later, at approximately 1:22 a.m. on October 22, 2011, appellant fatally shot the victim/decedent, Anthony Mitchell ("Mitchell"), at 149 West Sharpnack Street, only a few blocks away from the Chinese store. The facts underlying this incident have been summarized, in pertinent part, as follows:

> At approximately 1:22 am on October 22, 2011, a flash radio call indicated that a person with a gun was holding a male against his will in the first-floor residence at 149 West Sharpnack Street. As would later be determined, four individuals were within the residence—Sharda Frye, Ijanaya Clark, Anthony Mitchell, and the Defendant. Sharda Frye, Ijanaya Clark's cousin, and Anthony Mitchell were roommates in the first-floor unit. The flash radio announcement came in response to information received at the 911 call center. Sergeant Ayres testified that he and Sergeant Kennedy, both of whom were still at 6605 Chew Avenue and had just finished processing that crime scene, proceeded to 149 West Sharpnack Street which was roughly four blocks away from the Chinese store. Sergeant Ayres testified that he, Sergeant Kennedy and Officers McKeon and Bransfield, approached the front door of the residence. Sergeant Ayres testified that on about three occasions, a black female, roughly in her twenties, came to the bay window in the first-floor apartment which looked onto the front porch and looked out the window only to be pulled away from the window each time by another occupant within the residence. After the female peered through the window three times, the lights in the first floor residence were shut off. Sergeant Ayres testified that Officer McKeon checked the front door and found that the door was locked. Sergeant Ayres and Officer McKeon also banged on the door multiple times while yelling "Police" and demanding that the residents exit the property. In response to what they observed and the failure of the occupants to vacate the premises, Sergeant Ayres and Sergeant Kennedy manned the front door,

and Sergeant Ayres instructed Officers McKeon and Bransfield to cover the back of the residence.

Sergeant Ayres testified that he then contacted Lieutenant Overwise to apprise him of the situation. Lieutenant Overwise contacted the 911 caller to get more information and, based on what was told to him, Lieutenant Overwise declared the situation a barricade. Sergeant Ayres testified that between his arrival on location and Lieutenant Overwise's determination that the situation be handled as a barricade, 5 to 10 minutes had elapsed. As part of barricade protocol, the SWAT team, the fire department, and medical personnel were instructed to come to the scene, and a staging area was setup a distance away from the epicenter of the incident. Sergeant Ayres testified that, shortly thereafter, Officer Bransfield, who was located outside the rear of the property, was yelling at an individual to lie down, show his hands, and come downstairs. A short time after the property had been secured by police, Ms. Clark and Ms. Frye exited the property, the police secured both females and escorted them to the staging area. Both before and after the females left the residence, Sergeant Ayres testified that he heard loud noises emanating from the residence as if someone was moving furniture or running up and down stairs. Sergeant Ayres testified that 5 to 10 more minutes passed after the two females exited the property until the Defendant came out, with his shirt off and in his hand and with his hands above his head, as instructed by the police.

*Id.* at 6-8 (footnote omitted) (citations to the transcript omitted).

Officer Bransfield saw appellant wearing a distinctive black jacket which was later found abandoned on the third floor of the residence. (*Id.* at 8-9.) It matched the jacket described by Parrish. (*Id.* at 4.) The decedent, Mitchell's DNA was found on appellant's T-shirt. (*Id.* at 11.) In addition,

the ballistic evidence recovered from both crime scenes, including bullet specimens and FCC's, came from the same weapon, a .9 mm handgun found at 149 West Sharpnack Street. (*Id.* at 10-11.) The forensic pathologist, Sam Gulino, M.D., testified that Mitchell died from a gunshot wound to the head, entering slightly above and behind the left ear and exiting through the right side of the neck. (*Id.* at 12.) Ijanaya Clark testified that appellant and Mitchell were in the back room talking when she heard a gunshot. (*Id.* at 13.) Afterwards, she saw appellant with a gun in his waistband. (*Id.*)

On November 26, 2013, following a jury trial, appellant was found guilty of first-degree murder, aggravated assault by causing serious bodily injury, and two counts each of possession of an instrument of crime ("PIC") and carrying a firearm without a license. On January 10, 2014, appellant was sentenced to life imprisonment without parole for first-degree murder, and a consecutive sentence of 10-20 years' imprisonment for aggravated assault. The remaining sentences were run concurrently. Post-sentence motions were denied, and this timely appeal followed. Appellant complied with Pa.R.A.P., Rule 1925(b), 42 Pa.C.S.A., and the trial court has filed an opinion.

Appellant has raised the following issues for this court's review:

I.      Is the Defendant entitled to a new trial as the result of Court error when the Court wrongfully determined that the key witness for the Commonwealth was unavailable?

> II. Is the Defendant entitled to a new trial as the result of Court error when the Court refused to charge on alibi?
>
> III. Is the Defendant entitled to an arrest of judgment on all charges where the evidence is insufficient to sustain the verdict?

Appellant's brief at 3.[1]

First, appellant contends that the trial court erred in determining that Ijanaya Clark ("Clark") was unavailable, thus permitting the Commonwealth to introduce her preliminary hearing testimony as well as her prior statement to homicide detectives. Following an evidentiary hearing, the trial court found that the Commonwealth had made a good faith, reasonable effort to secure Clark's presence at trial. We agree.

> Under both our federal and state constitutions a criminal defendant has a right to confront and cross-examine witnesses against him. However, it is well established that an unavailable witness' prior recorded testimony from a preliminary hearing is admissible at trial and will not offend the right of confrontation, provided the defendant had counsel and a full opportunity to cross-examine that witness at the prior proceeding.

***Commonwealth v. Bazemore***, 614 A.2d 684, 685 (Pa. 1992) (citations omitted). Where the Commonwealth seeks to admit the prior recorded testimony of a missing witness, it must be established that the Commonwealth made a "good faith" effort to locate the witness.

---

[1] Appellant also raised a challenge to the weight of the evidence in his Rule 1925(b) statement, which has been abandoned on appeal.

*Commonwealth v. Jackson*, 344 A.2d 842 (Pa. 1975). What constitutes a "good faith" effort is a matter left to the discretion of the trial court. *Id. See also Commonwealth v. Lebo*, 795 A.2d 987, 990 (Pa.Super. 2002) ("It is within the discretion of the trial court to determine what constitutes a good faith effort to locate a missing witness, and the decision of the court will not be overturned absent an abuse of discretion." (citations omitted)). "The length to which the prosecution must go to produce the testimony is a question of reasonableness." *Commonwealth v. Melson*, 637 A.2d 633, 638 (Pa.Super. 1994), *appeal denied*, 647 A.2d 509 (Pa. 1994) (citations omitted).

The trial court details the substantial efforts the Commonwealth made to locate Clark in its August 14, 2014 opinion. (Trial court opinion, 8/14/14 at 16-21.) Police spoke with family members including Clark's sister, mother, Ziakia Clark ("Ziakia"), and grandmother. (*Id.* at 17-18.) Clark was listed as living at her mother's home but police made several visits there without success. Police were able to reach Clark using several different cell phone numbers; each time, she provided police with a bogus address and the number was subsequently disconnected. (*Id.* at 17-18, 39.) A bench warrant was issued for Clark; the Southwest Warrant Unit also went to Ziakia's residence on multiple occasions but received no response. (*Id.* at 19.) Ziakia told a police detective that her daughter knew police were looking for her regarding this matter and that she did not want to be

found. (*Id.* at 21, 39.) Police conducted surveillance outside Ziakia's house and checked local hospitals and the medical examiner's office. (*Id.* at 21, 40.) These efforts continued up to the day of trial. (*Id.* at 19.) In short, the Commonwealth made a good faith, reasonable attempt to find Clark.

Appellant argues that the Commonwealth should have taken extra steps to locate Clark, including checking with the Department of Public Welfare or medical clinics. (Appellant's brief at 11-12.) Apparently, Clark had recently given birth. Appellant also suggests that the Commonwealth could have enlisted the assistance of the United States Marshals. (*Id.* at 12.) However, the test is one of reasonableness. Under the circumstances, we agree with the trial court that the Commonwealth made reasonable, good faith efforts to locate the missing witness, who clearly did not wish to be found. The trial court did not abuse its discretion in finding Clark "unavailable" and permitting the Commonwealth to introduce her prior testimony.

In his second issue on appeal, appellant claims that he was entitled to an alibi instruction. According to appellant, his own testimony, as well as that of Sherille Haywood ("Haywood"), clearly placed him at a location other than Chew Avenue at the time of the first shooting. (Appellant's brief at 13.) In addition, appellant argues that because the ballistics evidence matched for both shooting incidents, if the jury had a reasonable doubt as to appellant's involvement in the Chew Avenue incident due to the alibi

testimony, they could also have had a reasonable doubt as to his involvement in the murder of Mitchell at 149 West Sharpnack Street. (**Id.**) Therefore, appellant demands a new trial on all charges. The trial court agreed with appellant that he was entitled to an alibi instruction as to the shooting at 6605 Chew Avenue, and found that its failure to give the requested alibi instruction was reversible error. (Trial court opinion, 8/14/14 at 37.) We disagree.

> An alibi is a defense that places a defendant at the relevant time at a different place than the crime scene and sufficiently removed from that location such that it was impossible for him to be the perpetrator. Where a defense rests on timing rather than location, it is not considered an alibi.

**Commonwealth v. Sileo**, 32 A.3d 753, 767 (Pa.Super. 2011) (**en banc**), **appeal denied**, 42 A.3d 1060 (Pa. 2012), citing **Commonwealth v. Collins**, 702 A.2d 540 (Pa. 1997).

> The Pennsylvania Supreme Court has defined alibi as "a defense that places the defendant at the relevant time in a different place than the scene involved and so removed therefrom as to render it impossible for him to be the guilty party." **Commonwealth v. Roxberry**, 529 Pa. 160, 163, 602 A.2d 826, 827 (1992); **see Commonwealth v. Jones**, 529 Pa. 149, 150-54, 602 A.2d 820, 821-22 (1992) (acknowledging alibi charge to jury as accurately stating the law: "whether the testimony given covers the entire time the offense is shown to have been committed and whether it precludes the possibility of defendant's presence at the scene."); **Commonwealth v. Pounds**, 490 Pa. 621, 631, 417 A.2d 597, 602 (1980) (holding that the testimony of the defendant which placed him at locations distinct

> from the vicinity of the crime at the time it was committed was sufficient to raise an alibi defense).

**Commonwealth v. Poindexter**, 646 A.2d 1211, 1218 (Pa.Super. 1994),

**appeal denied**, 655 A.2d 512 (Pa. 1995).

> An alibi instruction is required if the defendant presents evidence which covers the time period when the crime was committed and which puts him at a different location than that of the crime scene. **Commonwealth v. Repaci**, 419 Pa.Super. 591, 594-95, 615 A.2d 796, 798 (1992). It is not necessary for an alibi defense to be corroborated in order to constitute an alibi. **See Roxberry**, 529 Pa. at 165, 602 A.2d at 828; **Commonwealth v. Saunders**, 529 Pa. 140, 602 A.2d 816 (1991); **Commonwealth v. Willis**, 520 Pa. 289, 553 A.2d 959 (1989) (all requiring an alibi instruction when the alibi defense had been presented solely by the unsupported testimony of the defendant). There is no minimum or threshold quantum of physical separation necessary for a defense to constitute an alibi, so long as the separation makes it impossible for the defendant to have committed the crime. **Id.**

**Id.**

Haywood testified that she was living with appellant at the time of the incidents. (Notes of testimony, 11/25/13 at 68.) Haywood testified that on the night of October 21, 2011, appellant left their residence at approximately 11:00 p.m. (**Id.** at 70.) Neither appellant nor Haywood owned a vehicle. (**Id.**) According to Haywood, it would take someone approximately 30-40 minutes to walk from their residence to Chew Avenue. (**Id.** at 71.) Haywood testified that appellant was gone for about an hour. (**Id.**) When appellant returned, they talked for approximately

15-20 minutes and then appellant left again. (***Id.*** at 72.) Haywood admitted that appellant's cousin, James Newkirk ("Newkirk"), had a car and would give appellant a ride from time to time. (***Id.*** at 79-80.) Haywood was not sure whether or not Newkirk gave appellant a ride that night. (***Id.*** at 80.) Haywood did not know whether appellant was walking or got a ride from someone. (***Id.***)

Appellant testified that he left the house around 11:00 p.m. and walked to the 7-11. (***Id.*** at 94-95.) Appellant denied being in the vicinity of 6605 Chew Avenue on the night of October 21, 2011. (***Id.*** at 99.) According to appellant, he had never seen Parrish until the date of his first court appearance. (***Id.*** at 100.) Appellant admitted getting a ride to Sharpnack Street with Newkirk a little after midnight, but denied shooting Mitchell. (***Id.*** at 98, 100, 113.)

Clearly, Haywood's testimony did not establish an alibi for the Chew Avenue incident, the assault on Parrish. Haywood admitted that her times were approximations. Haywood did not know whether appellant was walking or had gotten a ride from Newkirk. Even if appellant were on foot, he could have left the house at 11:00 p.m. and arrived at Chew Avenue before 11:45 p.m. when the incident occurred. Haywood's testimony, if believed by the jury, did not preclude the possibility of appellant's presence at the crime scene.

Although appellant did take the stand and testify that he was not at 6605 Chew Avenue that night, appellant's request for an alibi instruction was based solely on Haywood's testimony. (*Id.* at 142-143; notes of testimony, 11/26/13 at 40.) Appellant never requested an alibi instruction based on his own testimony, only that of Haywood. *See* Pa.R.A.P., Rule 302(a), 42 Pa.C.S.A. ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); *Commonwealth v. Corley*, 638 A.2d 985, 990 (Pa.Super. 1994), *appeal denied*, 647 A.2d 896 (Pa. 1994) ("A defendant must object to a jury charge at trial, lest his challenge to the charge be precluded on appeal." (citations omitted)). Since Haywood's testimony did not put appellant at a different location than that of the crime scene, appellant was not entitled to an alibi instruction based on Haywood's testimony. The trial court did not err in denying appellant's request.[2]

Finally, appellant challenges the sufficiency of the evidence to support his convictions. According to appellant, the evidence was insufficient to support the charge of aggravated assault where Parrish never positively identified appellant and there was no other evidence linking him to the crime. (Appellant's brief at 15.) Appellant also claims that the evidence in the murder of Mitchell was purely circumstantial and established only his presence in the home at the time shots rang out. (*Id.*) Appellant argues

---

[2] With regard to the murder of Mitchell, appellant admitted being inside the house that night. There is no alibi issue with regard to the second incident.

that no one actually saw him fire the fatal shot. (**Id.**) Appellant suggests

that the jury's verdict was based on mere speculation and conjecture. (**Id.**

at 16.) We disagree.

> The standard we apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Johnson**, 833 A.2d 260, 262-263 (Pa.Super. 2003),

quoting **Commonwealth v. Lambert**, 795 A.2d 1010, 1014-1015

(Pa.Super. 2002) (internal citations and quotation marks omitted).

> A person is guilty of first degree murder where the Commonwealth proves: (1) a human being was unlawfully killed; (2) the person accused is responsible for the killing; and (3) the accused acted with specific intent to kill. **See** 18 Pa.C.S. 2502(a)[]. An intentional killing is a "[k]illing by means of poison, or by lying in wait, or by any other kind of

> willful, deliberate and premeditated killing." 18 Pa.C.S. 2502(d). "The Commonwealth may prove that a killing was intentional solely through circumstantial evidence. The finder of fact may infer that the defendant had the specific intent to kill the victim based on the defendant's use of a deadly weapon upon a vital part of the victim's body." *Commonwealth v. Blakeney*, 596 Pa. 510, 946 A.2d 645, 651 (2008) (citations omitted).

*Commonwealth v. Brown*, 987 A.2d 699, 705 (Pa. 2009), *cert. denied*, 562 U.S. 844 (2010) (additional citation omitted).

Appellant was convicted of aggravated assault under 18 Pa.C.S.A. § 2702(a)(1), which provides as follows:

> **(a)   Offense defined.--**A person is guilty of aggravated assault if he:
>
> (1)   attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]

With regard to Mitchell's murder, Clark testified that he and appellant were arguing for ten minutes before the gunshot. While no one actually saw appellant pull the trigger, Clark testified they were in the same room. Mitchell's blood was found on appellant's shirt. The jury was free to discount appellant's self-serving testimony that he was using the bathroom when he heard the gunshot. The jury could also infer consciousness of guilt from appellant's actions immediately following the shooting, including his refusal to exit the premises upon police command and hiding the gun on a ledge

outside the third-floor window. Mitchell was shot in the head, a vital part of his body. Clearly, the evidence was sufficient for the jury to find that appellant shot the decedent with specific intent to kill.

Turning to the first incident, the assault of Parrish outside the Chinese store, while the victim was unable to positively identify appellant as his assailant, he did pick his picture out of a photo array as a person who "looks like" the shooter. (Trial court opinion, 8/14/14 at 5, citing notes of testimony, 11/20/13 at 81, 114-120.) Parrish also accurately described appellant's physical appearance and the distinctive black leather jacket he was wearing, with white trim and a decal on the back. (*Id.* at 5-6.) Furthermore, the ballistics evidence from the Chew Avenue crime scene, including the FCC's and bullet specimens, matched the ballistics evidence recovered from 149 Sharpnack Street. The FCC's and bullets from both crime scenes all came from the same weapon, the .9 mm handgun left at 149 West Sharpnack Street. In addition, the two crime scenes were close in proximity, only a few blocks away. Police had just completed processing the Chew Avenue crime scene when they were called to proceed to 149 West Sharpnack Street. Viewing all the evidence in the light most favorable to the Commonwealth, as verdict winner, it was sufficient for the jury to conclude,

beyond a reasonable doubt, that appellant was Parrish's assailant.[3]

Appellant's sufficiency claim fails.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/10/2015

---

[3] Appellant does not challenge the sufficiency of the evidence to support his weapons convictions. In addition, although his sufficiency challenge to the aggravated assault conviction is based on misidentification, obviously the evidence was sufficient to make out all the elements of aggravated assault, causing serious bodily injury, where the victim was shot several times.